RICE v. SHEALEY.

DesPORTES v. SAME.

ROBERTSON v. SAME.

EHRLICH v. SAME.

JOYNES v. SAME.

PALMER v. SAME.

DUFFIE v. SAME.

MIMNAUGH v. SAME.

MULLER v. SAME.

CARROLL v. SAME.

1. CORPORATIONS—CONTRACTS—RATIFICATION—RAILROAD AID BONDS—LACHES.—If a railroad corporation contract with a construction company, the majority of whose board of directors are also directors of the railroad corporation, and township bonds issued in aid of the railroad company are paid by it to the construction company, as part consideration of the contract, and these bonds are paid to the stockholders of the construction company, as part of their profit of the contract, the contract, if voidable, may be ratified by the townships as stockholders by payments of interest on the bonds, with knowledge of the contract, where the railroad company has not complained, and the township stockholders have not sought relief through the railroad company, and the townships after lapse of fourteen years are barred by laches from raising this objection.

2. RAILROAD AID BONDS—TAXES.—THE LEGISLATURE by the act of 1888, 20 Stat., 12, delegated to the fiscal officers of counties in which township railroad aid bonds had been issued, the power to fix the rate and to levy the tax to pay the interest and principal on the bonds, and said act is not repealed expressly or by implication by the act of 1893, Code, 1902, 799.

3. BONDS.—A COUPON attached to a coupon bond bears interest after maturity in the hands of the holder of the bond.

Eleven petitions in the original jurisdiction of this Court for writs of mandamus: (1) Annie E. Rice *v.* Frank W. Shealy, as Treasurer, G. A. Derrick, as Auditor, G. A. Shealy, as County Supervisor, and Geo. W. Reeder and John W. Fry, Commissioners of Lexington County; (2) Susan L. DesPortes *v.* Same; (3) Edwin W. Robertson

*v.* Same; (4) J. Caldwell Robertson *v.* Same; (5) Edward Ehrlich *v.* Same; (6) Edward S. Joynes *v.* Same; (7) Edmund K. Palmer *v.* Same; (8) John L. Mimnaugh *v.* Same; (9) William K. Duffie *v.* Same; (10) J. Thornwell Muller *v.* Same; (11) Elizabeth A. Carroll *v.* Same.

*Messrs. Shand & Shand,* for two first named petitioners, cite: *These townships were validly incorporated and the bonds are valid:* 30 S. C., 1; 21 S. C., 419; 20 Stat., 12; 49 S. C., 539; 50 S. C., 321; 30 S. C., 579, 587; 50 S. C., 321; 33 S. C., 411. *Judicial determination of result of vote in townships is conclusive:* 24 How., 287; 99 U. S., 86, 684; 2 Black., 722; 105 U. S., 343. *Interest having been paid for eleven years, the assent of majority of votes cannot now be disputed:* 39 S. C., 45; 113 U. S., 227; 92 U. S., 484; 148 U. S., 591. *These securities having been held valid by this Court, there can be no reversal as to bonds subsequently purchased:* 1 Wall., 175; 101 U. S., 677; 109 U. S., 104. *Law presumes a holder of bonds a purchaser for value before maturity:* 105 U. S., 343; 27 S. C., 132; 28 S. C., 143; 32 S. C., 538; 2 Black., 722; 94 U. S., 278. *These bonds are negotiable instruments:* 13 Rose's Notes, 683; 8 Rich., 470; 11 Rich., 157; 3 S. C., 410; 12 S. C., 394. *Contract between railroad company and construction company do not affect these bonds:* 44 S. C., 320; 113 U. S. 227. *Mandamus is remedy:* 30 S. C., 519; 35 S. C., 213.

*Messrs. Melton & Belser,* for the other nine petitioners, cite: *As to the validity of the bonds:* 30 S. C., 1, 579, 587; 33 S. C., 410; 40 S. C., 26; 49 S. C., 535; 50 S. C., 521. *As to the duty required of the defendants:* 20 Stat., 12; Con. 1868, art. IX., secs. 4, 8; Con. 1895, art. X., secs. 3, 5; 62 S. C., 28; 49 S. C., 535; 4 S. C., 430; 35 S. C., 213, 245; 19 Ency., 2d, 725, 740; 18 S. C., 598. *These bonds are negotiable:* 1 Wall, 95; 21 How., 555; 96 U. S., 57; 2 S. C., 248; 12 S. C., 271; 8 S. C., 163. *Holder is presumed to have acquired for value before due:* 96 U. S., 314; 12 S. C.,

.272 ; 28 S. C., 143 ; 1 Bail., 355 ; 1 Strob., 299. *Respondents must show notice of defense or mala fides:* 28 S. C., 143 ; 8 S. C., 402 ; 96 U. S., 57 ; 12 S. C., 273. *Contracts between corporations having same directors are only voidable:* 2 Cook. on Corp., 1267, 1319, 1575, 1577 ; 57 Fed. R., 375 ; 39 S. C., 45 ; 33 L. R. A., 788.

*Messrs. Efird & Dreher,* contra, cite : *Attached coupons do not bear interest after maturity in hands of holder of bonds:* 8 Ency., 2 ed., 6 ; Dan. on Neg. Inst., 3d ed., sec. 1513 ; 26 L. R. A., 743. *The legislature and not these defendants should levy the tax to pay bonds:* 19 Stat., 362 ; 50 S. C., 321 ; 20 Stat., 12 ; Con. 1868, art. IX., sec. 8 ; Gen. Stat., 1882, 616 ; Rev. Stat., 1893 ; 681 ; Code, 1902, 799. *Bonds received by construction company of railroad company under the contract are without consideration, because contract is illegal:* 25 Wis., 551 ; 30 Barb., 553 ; 11 Mich., 222 ; 3 Vis., 740 ; 38 S. C., 440 ; 60 S. C., 272, 532 ; Rev. Stat., 1893, 1496.

March 16, 1905.  The opinion of the Court was delivered by

MR. JUSTICE GARY.  These cases, which were heard together, are applications to the Supreme Court, in the exercise of its original jurisdiction, for writs of mandamus. The petitioners are respectively the holders of certain bonds issued by the County Commissioners of Lexington County, as the corporate agents of the three townships mentioned in the petitions, in payment of the amounts subscribed by said townships to the capital stock of the Columbia, Newberry and Laurens Railroad Company, in 1886.  The railroad was completed and accepted by the Railroad Commissioners on the 30th of June, 1900.  Taxes were directed to be collected by the supply acts of 1891 to 1903, and were collected for the years 1891 to 1901, but no collections have been made since the tax levy of 1901.  The county treasurer now

has in his hands certain sums of money stated in the petitions.

The defendants made returns to the rules to show cause why the writs of mandamus should not be granted, and interposed several defenses. The returns are practically the same except those in the cases of Susan L. DesPortes and John L. Mimnaugh. .

In the case of Susan L. DesPortes, the return contains the following additional allegations: "* * * that the plaintiff holds said bond as heir, devisee or legatee of one R. S. DesPortes, who received said bond, while a director of the Congaree Construction Company, with full knowledge of all the facts hereinbefore alleged;" and in the case of John L. Mimnaugh, the return contains the additional allegations: "* * * that the plaintiff was a director of the Congaree Construction Company, at the time hereinbefore stated, and received said bonds with full knowledge of the facts hereinbefore alleged."

We will first consider the following defense set up in the returns: "The defendants are informed and believe that about the year 188   , a corporation known as the Congaree Construction Company was formed in this State, and that soon after its organization it entered into contract with the Columbia, Newberry and Laurens Railroad Co. whereby it agreed to build so much of said railroad as had not then been graded; to lay the iron thereon; to put on a certain amount of rolling stock; to build and equip depots, etc., and in consideration thereof, the said Columbia, Newberry and Laurens Railway Co. agreed to execute a mortgage deed or deed of trust over its right of way, road bed and everything it possessed, at about the sum of $12,000 per mile, and to deliver the bonds secured by such mortgage to said construction company in proportion as it completed parts of its contract, and in the same way contracted to deliver to the said construction company in proportion as the work progressed among other bonds the

bonds alleged to have been issued by the said Fork, Broad River, and Saluda Townships, except a small amount which may have been previously paid to a contractor, and under this contract all of said bonds came into the possession of said construction company. The defendants are informed that a majority of the board of directors of the said railroad company were also members of the board of directors of the said construction company and a majority thereof. The defendants submit that this contract between said companies is null and void for the facts above alleged, and the same carries no title to the said construction company in said bonds.

"The defendants further allege that they have been informed and believe that the said construction company, or some of its stockholders and some of the members of the board of directors thereof, who were likewise members of the board of directors of the said railroad company, were paid the said township bonds as their share of the profits in the said contract; and defendants submit that the said bonds were thus obtained by said stockholders without any valid consideration."

The transfer and delivery of the bonds by the C., N. & L. R. R. Co. to the Congaree Construction Company conveyed the legal title to said bonds. Conceding that the foregoing transaction was voidable, it was nevertheless subject to ratification. The transaction took place many years ago, taxes from year to year have been levied and paid to the owners of the bonds with knowledge of said transaction on the part of all parties in interest; the C., N. & L. R. R. Co. has not complained of the contract, there is no danger that the townships will be called upon to pay these bonds to any one else; the townships as stockholders have not sought relief through the corporation that transferred and delivered the bonds. These facts clearly show ratification, and that the townships are barred by *laches* from raising the objection hereinbefore mentioned.

We will next consider the following objection to granting the writs, relied upon by the defendants: "That if the plaintiff is entitled to collect from the township the amount he claims against it herein, he can only do so, if at all, under the act of 1888 (20 Stat., 12), set out in the fifth paragraph of the petition, and under that act and the laws and Constitution of this State, such levy as is herein sought can only be made by the General Assembly of the State."

The act of 1888, 20 Stat., 12, is as follows: "Whereas, certain townships in this State have, by their vote, expressed their willingness to subject themselves to taxation for the purpose of paying bonds issued by them in aid of certain railroads; and whereas, by reason of a defect in the acts authorizing the issue of said bonds, they have been declared invalid. Now, therefore, for the purpose of carrying into effect the expressed will of the people of said townships:

"Section 1. Be it enacted by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That the township bonds heretofore issued by county commissioners as the corporate agents of any township in this State in aid of any railroad by vote of the inhabitants of said township, are hereby declared to be debts of said township, respectively, having authorized the issue of the same. And the interest and principal thereof shall be paid according to the terms of the said bonds or debt by the assessment, levying, and collection of an annual tax upon the taxable property in said townships, so far as may be necessary, in like manner and by the same county officials as the tax leved for county bonds in aid of railroads is assessed, levied and collected. Said tax to be known and styled in the tax books as the township railroad tax, and when collected shall be paid over by the treasurer of the county to the holders of said bonds as the interest thereon may become due and according to the terms thereof. All dividends received

by or for said townships on stock in railroad companies which have been aided by the said township bonds or debt shall be applied by the county commissioners of the county in which said townships are respectively situated primarily towards the payment or retirement of said bonds or debt, and the surplus shall be expended in the improvement of the highways within the territorial limits of said townships.

"Section 2. That no tax shall be levied under the provisions of this act to pay the interest on any township bonds until the railroad in aid of which they were subscribed shall be completed through such township and accepted by the railroad commissioners, nor shall this act be so construed as to authorize the levy and collection of any tax to pay the interest that may have accrued on such bonds before the completion of such railroad, as provided in this section: *Provided,* That in all townships where taxes have been assessed or collected contrary to the provisions of this act, the county treasurers of the respective counties are hereby required, where such have been paid, to refund the same; and where they have not been paid, to allow a rebate to the extent of such taxes.

"Section 3. That this act shall take effect immediately upon its approval."

The defendants contend that the foregoing act should be considered as amended by the act of 1893, incorporated in the Revised Statutes (1893) as section 681, and is as follows: "The county board of commissioners shall prepare an estimate of the amount of money necessary to pay the expenses incurred by said board, and for ordinary county purposes, and report the same to the comptroller general of the State, on or before the 15th day of November of each year, to be by him submitted to the General Assembly, in order to provide the necessary taxation for county purposes." The foregoing is incorporated in the Code of Laws (1902) as section 799, except 5th of January is inserted instead of 15th November.

In *Morton, Bliss & Co.* v. *Comptroller General,* 4 S. C., 430, 453, the Court says: "The duty enjoined on the legislature is to 'levy a tax.' A tax is the means by which a burden primarily borne by the State is transferred to the citizen * * * Three things are essential to a tax, as that term is understood by our Constitution: First, the ascertainment of a sum certain, or that can be rendered certain, to be imposed on the collective body of taxpayers; second, a legal imposition of that sum as an obligation on the collective body of taxpayers; third, an apportionment of such sum among individual taxpayers so as to ascertain the part or share that each should bear. * * * The first two acts above described, namely, the ascertainment of a sum to be imposed on the collective body of taxpayers, and its imposition by a legislative declaration to that effect, are essentially legislative acts or acts proper, directly to the law-making function of the government * * * The third act, namely, the apportionment of the whole sum imposed by way of tax on the collective body of taxpayers upon the separate individuals composing that body, is usually an administrative act performed under specific statutory directions, ascertaining the mode and time of its performance * * * When the aggregate value of property is ascertained at the time the tax levy is ordered, the legislature frequently makes the division, and directs the levy to be made according to the resulting rate, which is thus established by law, instead of merely fixing the amount to be levied, and leaving the rate to be ascertained by computation after the aggregate valuation of property, subject to taxation, is ascertained and known. Both modes are resorted to, and both are equally appropriate to adoption by the legislative body. As there are two distinct stages in this process, the result of one of which is to fix an indebtedness on the collective body of taxpayers and the other on the individual taxpayer, so the word 'levy' is indifferently employed, as commonly used, to express either one of these processes separately, or both collectively. A tax is said to

be levied, when the amount or rate to be imposed is fixed by law; for what is wanting to complete such levy is supplied by the standing tax laws, and consists in a course of administrative action. When the levying of a tax is spoken of as a legislative act, it is commonly understood to describe such action on the part of the legislature as would, with standing tax laws, complete the legislative authority requisite to enable the administrative department to distribute and collect the tax * * * In other words, the tax directed to be levied must be so far imposed, in order to comply with the letter and spirit of the Constitution, that no further legislation will be necessary to enable its collection." This language is quoted with approval in *Ry. Co.* v. *Kay,* 62 S. C., 28, 39 S. E., 785.

When the legislature, by the act of 1888, imposed a tax that could be rendered certain in amount on the townships, it had the power either to fix the rate of the levy or to delegate this detail to the fiscal officers of the county. It chose the latter mode of collecting the tax.

The act of 1893 contains no reference to the act of 1888, and certainly does not repeal any of its provisions in express terms, nor, do we think, it repealed any provision of that act by necessary implication.

The defendants filed the following exception to the report of the special referee: "Please take notice that the defendants except to so much of the report of the referee filed herein as finds and calculates the interest on the coupons attached to the bonds sued on herein after maturity, on the ground that coupons while attached to the bonds to which they belong are incidents of the bonds. and so long as they are so attached and in possession of the holder of the bonds, do not draw interest after maturity."

The defendants concede that the Court decided otherwise in the case of *Langston* v. *R. R.,* 2 S. C., 248, but contend that this is not the correct principle. In the case of *Nesbit* v. *Independent Dist.,* 144 U. S., 610, 619, the rule is thus

stated: "Each matured coupon is a separate promise, and gives rise to a separate cause of action.    It may be detached from the bond and sold by itself.    Indeed, the title to several matured coupons of the same bond may be in as many different persons, and upon each a separate and distinct action be maintained.    So, while the promise of the bond and of the coupons, in the first instance, are upon the same paper, and the coupons are for interest due upon the bond, yet the promise to pay the coupon is as distinct from that to pay the bond, as though the two promises were placed in different instruments upon different paper."    This language is quoted with approval in *Edwards* v. *Bates County,* 16 Sup. Ct. Rep., 967 and states the principle correctly.

The returns to the rules to show cause are insufficient, and the petitioners are entitled to costs.

It is the judgment of this Court, that a writ of mandamus do issue in each of said cases in accordance with the prayer of the said petitions.