# THE STATE ex rel. CITY OF SEDALIA and GUARANTY TRUST COMPANY OF KANSAS CITY v. E. H. WEINRICH, Treasure of City of Sedalia.

## In Banc, January 21, 1922.

1. **CITY INDEBTEDNESS: Refunding Bonds: New Debt.** A judgment against a city on account of unpaid water rentals is conclusive of the validity of the indebtedness upon which it is founded, and the issuance of bonds to pay said judgment is a mere refunding of an existing valid indebtedness, and only changes the form thereof, and is not a new indebtedness. The refunding of a valid debt in such manner that the payment and extinguishment precedes or is simultaneous with the coming into existence of the refunded debt as an obligation, does not create a new indebtedness or add to the previous one, but merely changes its form. [Distinguishing State ex rel. Clark County v. Hackmann, 280 Mo. 686.]

2. ———: ———: **Without Popular Vote.** The mayor and city council of a city of the third class can issue refunding bonds to pay an existing judgment against the city, without the consent of the voters at an election held for that purpose. The bonds must be used to extinguish the judgment, which must be lawfully released and the debt actually extinguished before they can become obligations of the city, for otherwise they would be the creation of a new or additional debt, but it is entirely possible to comply with the statutes on the subject without bringing them into conflict with the Constitution.

3. ———: **Constitutional Restrictions: Power to Tax, Legislative.** The limitations upon the taxing power of cities found in Section 11 of Article X of the Constitution are self-enforcing, but that section confers upon a city no power to tax, but such power is derived from acts of the General Assembly; and since the power of a city to levy a tax of sixty cents comes from the General Assembly, the General Assembly has power to restrict the city council to a levy less than sixty cents.

4. ———: **Act of 1921: Restricting Levy to Ten Per Cent Over Previous Year: Vested Right.** The Act of 1921 declaring that a city shall not levy a rate of taxes which will produce more than ten per cent in excess of the revenue produced by the rate of levy

ordered in the preceding year, does not destroy or impair vested rights, although it may preclude the raising of enough revenue to pay existing indebtedness; for a city debt is incurred with full knowledge that the Legislature can reduce the tax levy, and the possibility of such a reduction is an incident of the contract out of which the indebtedness arises. The incurrence of a lawful indebtedness under one levy does not estop the Legislature to exercise its constitutional power to reduce the levy.

5. ———: Refunding Bonds: No Tax Provision: Current Expenses. City bonds may be valid, though the tax levied for their payment may be uncollectible. A city may levy and use for current expenses the full tax it is authorized by statute to levy; but the fact that it has already levied for current expenses the largest tax it is permitted by statute to levy, does not make invalid refunding bonds to pay a monetary judgment against the city, though the tax provided for in the ordinance to pay them may be uncollectible because the city has already levied for current expenses the maximum rate permissible. A city may use any surplus that may remain out of the levy for current expenses, after current expenses for the year have been paid, to pay its indebtedness; but the creditor cannot require payment out of the levy for current expenses, since such a right is inconsistent with the provision against anticipation of revenue without a vote of the people; but that fact does not render invalid bonds issued in lieu of a judgment debt.

## Mandamus.

WRIT GRANTED.

*Montgomery & Rucker* and *Wilkerson & Barnett* for petitioners.

(1) Where the statute provides that bonds issued shall be exchanged for an outstanding indebtedness, an issue of bonds under the provisions of such statute does not create a new indebtedness, nor increase the old, but merely changes the form of an existing indebtedness. State ex rel. v. Hackmann, 280 Mo. 704; Huron v. Savings Bank, 30 C. C. A. 38; Fairfield v. School District, 54 C. C. A. 342; Hamilton County v. Savings Bank & Trust Co., 84 C. C. A. 523; Butler v. Lewistown, 11 Id. 393;

State ex rel. Sedalia v. Weinrich.

Cedar Rapids v. Bechtrel, 110 Iowa, 196; Farson, v. Sinking Fund Commrs., 97 Ky. 119; Hotchkiss v. Marion, 12 Mont. 218; Re Menefee, 22 Okla. 365; Hirt v. Erie, 200 Pa. 223; National Life Ins. Co. v. Mead, 13 S. D. 37; Miller v. School District, 5 Wyo. 217; Blanton v. McDowell County, 101 N. C. 532; McCreight v. Camven, 49 S. C. 78; Los Angeles v. Teed, 112 Cal. 319; Re State Bonds, 81 Me. 602; Lake County v. Keene Savings Bank, 47 C. C. A. 464; Etna Life Ins. Co. v. Lyon County, 44 Fed. 329. (2) Section 8312, Laws 1921, does not limit the power of the city to make a levy to discharge a judgment debt which was liquidated prior to the enactment of the law. Sec. 10, Art. I, U. S. Constitution; Sec. 2, Art. XV, Mo. Constitution; Sec. 15, Art. II, Mo. Constitution; Ins. Co. v. Flynn, 38 Mo. 483; Barton County v. Walser, 47 Mo. 189; Koch v. Trust Co., 181 S. W. 44.

*Leonard W. Rodekohr* for respondent.

(1) The proposed bond issue is unconstitutional. The bonds are to be sold and the proceeds applied in payment of a judgment indebtedness. This plan is to be distinguished from cases where bonds are issued to be exchanged for another form of indebtedness, where, the prior indebtedness being cancelled or the bonds representing such indebtedness surrendered simultaneously with the delivery of the funding bonds, there is no increase in the indebtedness. But under the plan in this case it is apparent that after the bonds are sold and until the proceeds are applied as directed, there is bound to be an increase in the indebtedness while the exchange is made, and whether or not it is permanently so depends on the application that is made of the money received from the sale of the bonds. But even a temporary increase, however brief, will not be allowed. Jones v. McGraw, 41 Pac. 893; State, ex rel. v. Atkinson, 86 Pac. 575; Birkholz v. Dinnie, 72 N. W. 931; Reynolds v. Lyon

County, 96 N. W. 1096; Litchfield v. Ballou, 114 U. S. 190; Doon Township v. Cummins, 142 U. S. 366; State ex rel. Clark County v. Hackmann, 218 S. W. 318. (2) In determining the constitutionality of a statute, it is not necessary to show that the action in question actually does violate the Constitution, but it is only necessary to show that the statute permits a violation of the Constitution. In other words, the question of constitutional power depends not upon what was done in a particular case, but upon what was authorized to be done. People v. Marquiss, 291 Ill. 121; Security Trs. Co. v. Lexington, 203 U. S. 323. And when the constitutional defense is pleaded the burden of proof is upon the plaintiff to show that the indebtedness is within constitutional limit. Thornbury v. School Dist., 175 Mo. 12; City Water Co. v. Sedalia, 288 Mo. 411. (3) The proposed bond issue contravenes the provisions of Section 8312 of Laws of 1921. It is affirmatively alleged in the answer that in June, 1921, the city council of Sedalia passed a general tax levy ordinance which is calculated to produce mathematically a full ten per cent in excess of the tax levy for the previous year. This tax levy was already in full force and effect when the ordinance was passed providing for the proposed bond issue and providing a tax levy of three-fourths of one cent on the one hundred dollars' valuation to pay such bonds and interest. Therefore, the ordinance providing for the bonds in question proposes to increase the tax levy for this year so that it will produce mathematically more than ten per cent in excess of the revenue provided by the previous tax levy. That is exactly the thing that is prohibited by the Laws of 1921. (4) Since the actual effect of the Law of 1921 is to permit the city to collect more money, the change of the law is a mere change in a mode of prodecure. The City Water Company has no vested right in the manner in which money shall be collected by the city for the payment of its debts, but only has a vested right to demand that the city shall be permitted to collect at least as

much money as it could collect when the indebtedness was created. There is no vested right in a mode of procedure. Ill. Cent. Ry. Co. v. Wenona, 163 Ill. 288; Benshoof v. Iowa Falls, 156 N. W. 898; 12 C. J. 968; Natl. Surety Co. v. Decorating Co., 226 U. S. 276.

JAMES T. BLAIR, C. J.—The city water company of Sedalia obtained judgment against the city of Sedalia for $14,816.52 on account of unpaid water rentals. The judgment was affirmed in this court (City Water Co. v. City of Sedalia, 288 Mo. 411,) in June, 1921. There was no money in the city treasury available to pay the judgment. Acting under Section 8317, et seq., Revised Statutes 1919, the city council passed and the mayor signed an ordinance providing for payment by an issue of judgment-funding coupon bonds for $14,500. Bids therefor were duly received and the relator Guaranty Trust Company was the highest bidder. Respondent was and is the city treasurer. He refused to countersign the bonds as required by the statute, and this proceeding was begun to compel him to do so. Respondent concedes that the tax levy for the year is materially less than the constitutional limit. This remains true when the three-fourths of one cent on each $100 of the city assessment, the levy for the payment of the bonds in question, is included.

I.    Respondent's first contention is that the bonds in question will constitute a new indebtedness and therefore cannot lawfully be issued without the consent of the voters at an election held for that purpose. [Sec. 12, Art. X, Constitution.] The judgment against the city is conclusive of the validity of the indebtedness upon which it is founded. Relators insist the bonds proposed to be issued will constitute a mere refunding of an existing valid indebtedness, and that their issuance will result simply in changing the form thereof, and will neither change nor add to

*Changing Form of Debt.*

291 Mo. Sup.—30

the city's indebtedness in a manner obnoxious to the Constitution. In State ex rel. Clark County v. Hackmann, 280. Mo. 686, it was held that the issuance and sale of county bonds for the purpose of raising money which was subsequently to be used to discharge an existing indebtedness created a new debt. This, upon the theory that a liability on the bonds came into existence upon their sale and delivery, and that the liability upon the old debt continued to exist until the proceeds from the bonds were thereafter actually applied to extinguish it. It is made clear in that opinion that it was not intended to decide that a refunding of a debt by a process which extinguished it at the time or before the refunding bonds became actual obligations of a municipality, would create a new debt in any sense. That a city might make a new contract in renewal of a prior valid obligation had already been decided by this court. [State ex rel. v. Neosho, 203 Mo. l. c. 96.] In the briefs in this case and those which accompany the opinion in the Clark County Case, as well as in the majority and dissenting opinions in that case, may be found collections of the decisions which show that the great weight of authority is to the effect that the refunding of a valid debt in such manner that the payment and extinguishment precedes or is simultaneous with the coming into existence of the refunded debt as an obligation, does not create a new indebtedness or add to the previous one, but merely changes its form. This is true whether the refunding bonds are exchanged for the evidences of the old debt or are sold and the proceeds actually used to extinguish the old at the time and in the manner stated. It seems to us that sound reason also supports this view.

II.   The authority of the city to refund is given by the following sections of the statute: (Secs. 8317, 8318, 8319, 8320, R. S. 1919):

"The mayor and council of any city of the third class, for the purpose of paying any sum of money which

it may now or hereafter be required to pay by the judg-

**Statutes.**  ment or decree of any court of record, may issue coupon bonds of the city, payable in such lawful money of the United States as they may provide, which shall run for a period not exceeding twenty years, may carry interest payable annually or semi-annually, at a rate not exceeding six per centum per annum, shall be signed by the mayor, countersigned by the city treasurer, attested by the city clerk, and shall bear the seal of the city.

"No such bonds shall be issued in such manner as to increase the indebtedness of the said city, but such bonds shall be delivered in payment and discharge of sums which it shall be required to pay by the judgment or decree of any court, at least equal to the principal sum of the bonds so delivered; or such bonds shall be sold as directed by the council of the city, or, in the absence of such directions, by the city treasurer, and the proceeds thereof shall be applied only to the payment of the sums aforesaid; but all such bonds so sold shall be delivered at the same time that the sums aforesaid shall be paid and discharged.

"Every city issuing bonds under the provisions of that article shall, before or at the time of doing so, provide for the collection of an annual tax, which, together with all sums which shall be applicable to the payment of the principal and interest of the said bonds, shall be sufficient to pay the interest of the said bonds, as it falls due, and also to constitute a sinking fund for the payment of the principal thereof at the maturity thereof. Such sinking fund shall be kept invested and managed in the same manner as the other sinking funds of such city.

"All bonds purporting to be issued by virtue or in pursuance of the three preceding sections, and signed and sealed as hereinbefore provided, shall, in favor of bona-fide holders, be conclusively presumed to have been duly and regularly authorized and issued in accordance with the provisions herein contained, and no holder shall

be obligated to see to the existence of the proceedings, or to the validity of the judgment and decrees to be paid, or to the application of the proceeds. All such bonds shall be negotiable in all respects and to the same extent as securities negotiable by the law merchant.''

Unquestionably these sections authorize a course in harmony with the rule just stated and not out of harmony with that laid down in the Clark County Case. If some of the language in Sections 8318 and 8320 might seem broad enough to indicate an attempt to permit something else, such a construction is prevented by the Constitution itself as construed in the Clark County Case. The bonds cannot become valid obligations if they create a new debt, because no vote was taken. They would create a new debt if validly issued before the old debt was extinguished. Since the Constitution does not permit the creation of a new debt of the kind without a vote, the bonds cannot be lawfully issued and become obligations of the city until the old debt is extinguished. The judgment against the city in the former case must be lawfully released and the debt actually extinguished before these refunding bonds can become obligations of the city. This is the only construction of the statute which the Constitution and the rule in the Clark County Case will permit. Any language in it which tends to a contrary result conflicts with the Constitution. It is entirely possible to comply with the statute so construed, and we do not think the city treasurer can refuse his signature because the purchaser and the city might attempt to close the transaction in some way which would conflict with the Constitution and render the refunding bonds invalid, or because the Legislature inadvertently seems to have attempted to relieve purchasers of such bonds of some obligations and duties irrevocably placed upon them by the Constitution as conditions precedent to the validity of the bonds.

III.   Respondent urges that there is no authority for the tax provided for in the ordinance which authorizes the issuance of the refunding bonds.  This contention is based upon the fact that the city has already levied for current purposes a tax which will produce the amount produced, mathematically, by the levy of the preceding year, and ten per cent in addition thereto and that the bond tax will be in excess of this amount.  This argument is based upon the Act of 1921, Laws 1921, pp. 518, 519.  It was held in State ex rel. v. Van Every, 75 Mo. 1. c. 537, that the limitations upon the taxing power of cities found in Sections 11, Article X, of the Constitution are self-enforcing, but that the sections conferred upon a city no power to tax, that such power is derived "from acts of the General Assembly and not directly from the constitutional provision we are considering."

No Collectible Tax.

In the absence of authorization of a new debt by the voters under the rule in the Clark County Case the sole source of payment of the indebtedness to the water company, prior to its being merged in the judgment, was such surplus as might remain out of the levy for current expenses after current expenses for the year had been paid.  The creditor could not *require* payment out of the levy for current expenses (State ex rel. v. Zinc Co., 272 Mo. 1. c. 51), since such a right is inconsistent with the provision against anticipation of revenue without the vote of the people.  If a balance remained after current expenses were met out of the general levy the debt might have been paid, *pro tanto*, out of such balance.  But the amount of the levy for current expenses cannot exceed the levy which is authorized by the Legislature, if the doctrine of the Van Every Case is sound.  That doctrine was unanimously re-announced in Brooks v. Schultz, 178 Mo. 1. c. 227.  The question then is whether the Legislature has given authority under which a levy can be made which will raise more than ten per cent more than the

levy for 1920 would have raised if collected. The Act of 1921 provides that a city of the third class may cause a census to be taken, and if that census shows a population of 30,000 or more the levy shall not exceed one dollar per hundred of assessed value; if the population shall be less than 30,000 and over 10,000 (as in this case) the levy shall not exceed sixty cents on the hundred dollars.

The act declares these to be "maximum rates which may be levied in such cities." This is followed by a proviso to the effect that the council "shall not have power to order a rate of levy on real or personal property for the year 1921 which shall produce more than ten per cent in excess of the amount produced, mathematically, by the rate of levy ordered in 1920" and a like increase in successive years. Then it is provided that the voters may increase the levy beyond the statutory and within constitutional limits by majority vote. On the face of this act the Legislature has limited the levy which may be made, and has used no language adequate to invest the council with powers to levy more than the proviso prescribes. So far as the language of the statute provides, therefore, the city council is without authority to levy a tax in excess of a sum equal to the tax of 1920 and ten per cent and, therefore, without power to levy the bond tax in question in this case. The decision in Calland v. Springfield, 264 Mo. 296, had the full concurrence of but two judges other than its writer. In addition it is distinguishable from the case at bar. It is not to be construed to hold that a city gets its taxing power directly from the Constitution. The language of Section 11 of Article X and the previous decisions of this court disclose the unsoundness of a holding such as that would be. That case, on this point, must be understood to hold that Section 9248, Revised Statutes 1909, first fully empowers the city to levy to the constitutional limit and then attempts to affix to a part of such levy an unconstitutional condition. The language of that section

differs from the language of the Act of 1921 with respect
to this feature. The Act of 1921 confers upon the council
no power except the power to levy 110 per cent of the tax
of the preceding year. So understood the Calland Case
is not out of harmony with the decisions referred to, and
is confined to the question then before the court.

Relators insist that the Act of 1921 is bad since the
Legislature cannot destroy or impair vested rights or
create any obligation, impose new duty or attach a new
liability in respect to transactions already passed,
or deny all remedy or so condition and restrict

**Vested Right.**

it as materially to impair such rights.   [They cite
Hope Trust Ins. Co. v. Flynn, 38 Mo. 483, Barton Co. v.
Walser, 47 Mo. 189, and Koch v. Trust Co., 181 S. W.
44.]   The general rule announced in these decisions ac-
cords with that of all the cases. Its application to this
case is a different matter. As stated, the revenue to
which the Water Company was. obliged to look prior to
judgment was such balance as might remain in any year
after current city expenses were paid out of the general
levy for that year. It is true that the city had the right
under the statute in force when the debt was made to
levy sixty cents on each $100 assessed valuation. It is
also true, since the power to levy the sixty cents came
from the Legislature, that the Legislature had the power
to cut down that power and restrict the council to a levy
less than sixty cents. Whatever rights, if any, accrued,
accrued subject to the power of the Legislature to amend
the law. The fact that the city incurred a lawful indebt-
edness under one levy could not estop the Legislature to
exercise its constitutional power to reduce the levy. The
debt was incurred with full knowledge of the fact that
the Legislature could make the change and, in fact, the
possibility of such a change was an incident of the con-
tract since the applicable law became a part of it. It is
not out of place to add that the Legislature had no power
to authorize the council to anticipate the city income by
charging it absolutely with a tax to pay the bonds in this

case.    If the full amount of the levy the city lawfully might make should not be required, in any year, to pay current expenses, the inclusion of an amount (the whole being within the maximum the statute allows) sufficient to pay, the bond tax would be lawful.    The city would not be bound, however, to forego its right to levy and use for current expenses the full tax it is authorized to levy by statute.    To hold otherwise would be to hold that a city could defeat the cash basis policy of the constitution by the device of getting into debt.

IV.    Nevertheless, the bonds are valid bonds, though the tax may be uncollectible.    The city treasurer cannot refuse to perform his statutory duty because the law, as a part of the bonds, may require a construction of them which somewhat modifies the language used in them.    For this reason the alternative writ is made peremptory.

**Bonds Valid Nevertheless.**

All concur; *David E. Blair, J.,* in the result.