(August 7, 1925.)

O. V. SEBERN, EMIL JULLION and T. R. HARTLEY, as the Board of Commissioners of Drainage District No. 2 of Ada County, Idaho, Respondents and Cross-appellants, v. B. E. COBB, Appellant and Cross-respondent.

[238 Pac. 1023.]

MUNICIPAL CORPORATIONS — SECURITIES—REFUNDING BONDS—DRAINAGE DISTRICTS—BOARD OF COMMISSIONERS—RESOLUTION OF—CONTENTS —DENOMINATIONS OF BONDS — RATE OF INTEREST—CALLING OUT-STANDING BONDS — FUNDS ON HAND—CONTRACT OBLIGATION—-IM-PAIRMENT OF — ENCUMBRANCE — DUE PROCESS OF LAW — INTERIM BETWEEN ISSUANCE OF REFUNDING BONDS AND REDEMPTION OF OUTSTANDING BONDS.

1. A resolution of the board of commissioners of a drainage district authorizing the issuance of refunding bonds, providing that the bonds shall be issued "in denominations of One Hundred, Five Hundred and One Thousand Dollars, in such proportion and amounts as may be most advantageous to said district and the sale of said bonds," and shall "bear interest at the lowest rate at which the same may be legally sold, and in no event to exceed interest at the rate of six per cent per annum," is a sufficient compliance with Sess. Laws 1925, c. 21, sec. 3, which requires that such resolution designate the denomination or denominations of the refunding bonds, and fix the rate of interest which they shall bear.

2. A county treasurer may not call outstanding bonds of a drainage district under the provisions of C. S., title 34, c. 179, and Sess. Laws 1925, c. 21, unless he has on hand over $5,000 in the fund for payment of such bonds, nor call bonds in excess of the amount he is able to pay with the funds in his hands.

3. Bonds of a drainage district, which have not been outstanding and unpaid for more than three years, cannot be called by a county treasurer.

4. The calling of bonds of a drainage district which have been outstanding and unpaid for more than three years, in the manner provided by Sess. Laws 1925, c. 21, does not impair the contract obligation of a bondholder by depriving him of interest upon such bonds thirty days after the call.

5. The fact that refunding bonds, issued to redeem outstanding bonds of a drainage district, will be a lien and encumbrance against the property within the district for a greater length of time than the property will be encumbered by the outstanding issue does not deprive a holder of such real property of property without due process of law.

6. Outstanding bonds of a drainage district, which could not have been paid by funds raised by the assessments provided for in C. S., c. 179, cannot be called for refunding, even though they have been outstanding for three years, without impairing the contract obligation of such bonds.

7. Sess. Laws 1925, c. 21, and the issuance of refunding bonds thereunder, does not impair the obligation of the contract evidenced by the outstanding bonds and coupons, where said bonds have been outstanding for a period of five years.

8. A drainage district has two options in issuing refunding bonds. It may issue and sell bonds for the purpose of paying and redeeming outstanding bonds, and may call and pay such bonds, or it may authorize the issue of sufficient bonds to pay and redeem the whole of such outstanding bonds, and issue and sell the same in such amounts, from year to year, as will pay and redeem the outstanding bonds falling due each year; and it is error for the court, upon a resolution exercising the first option, to enter judgment authorizing and directing the exercise of the second option instead.

9. There is no constitutional prohibition against the legislature's providing for the issuance and sale of refunding bonds to redeem outstanding bonds of a drainage district, even though there is an interim between the issuance and sale of the refunding bonds and the redemption of the outstanding bonds.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Dana E. Brinck, Judge.

Appeal from decree approving issuance of refunding bonds of drainage district. *Reversed* and *remanded,* with instructions.

Morgan & Smith, for Appellants and Cross-respondents.

The law creating a sinking fund for the payment of the principal and interest of bonds enters into and becomes a part of the contract whereby the bonded indebtedness is created, and to amend the law to the detriment of the bondholder is to impair the obligation of the contract in violation of art. 1, sec. 10 of the U. S. constitution, and art. 1, sec. 16 of the Idaho constitution. (C. S., secs. 4547, 4548; Sess. Laws 1925, chap. 21, p. 29; Abbott on Public Securities, p. 751, sec. 362; *English v. Supervisors of Sacramento,* 19 Cal. 172; *Dillingham v. Hook,* 32 Kan. 185, 4 Pac. 166; *Board of Commrs. of Clark County v. Woodbury,* 187 Fed. 412, 109 C. C. A. 244.)

To construe chapter 21, Sess. Laws 1925, as authorizing the refunding of the bond issue here in question, so as to stop the accumulation of the interest on the bond owned by appellant and cross-respondent, and so as to encumber his land with a bonded indebtedness for a longer period than it was encumbered prior to the enactment of said chapter, is to deprive him of his property without due process of law in violation of the fourteenth amendment to the U. S. constitution and of art. 1, sec. 13 of the constitution of Idaho.

The resolution adopted by respondents as commissioners of said drainage district, providing for refunding the bonded indebtedness of the district, is insufficient and does not conform to the requirements of the law in this, that the denomination, or denominations, of the refunding bonds proposed to be issued is not therein designated, neither is the rate of interest said bonds are to bear fixed in said resolution. (Sess. Laws 1925, chap. 21, sec. 3, p. 30.)

The proceedings of respondents as commissioners of said Drainage District No. 2, wherein the refunding of bonded indebtedness amounting to $65,000, was authorized, evidenced by the bonds numbered from 1 to 130, inclusive, and dated August 1, 1922, should not have been approved or confirmed by the court, for the reason none of said bonds last above mentioned has been outstanding for a period of

more than three years. (Sess. Laws 1925, chap. 21, sec. 2, p. 29.)

Reddoch & Hunter, for Respondents and Cross-appellants.

Under the statutes existing at the time of the issuance of the bonds sought to be refunded, and which have subsequently remained in effect, the commissioners of Drainage District No. 2, if they had exercised the limit of the authority conferred upon them to levy assessments, the entire issue dated August 1, 1920, and sixty per cent of the issue dated August 1, 1922, could have been paid off and retired by August 1, 1925, and under such circumstances it cannot be said that any right of a bondholder is affected by the district paying money at that time which it had the power to raise, even though the same is obtained from other sources than taxation. (C. S., secs. 4527, 4548, 4552, 4553.)

Contracts, such as that represented by a municipal bond when it, or the law under which it was issued, provides that it may be called and redeemed at the option of the municipality, or after the expiration of a designated period of time, are not impaired by calling and paying such obligation in the exercise of such right, even though the moneys obtained for such purpose are received from sources other than that contemplated in the law under which the obligation was issued. (C. S., sec. 4528; Abbott, Pub. Securities, p. 740, sec. 355; *Territory v. Hopkins,* 9 Okl. 133, 59 Pac. 976; *Stewart v. Henry County,* 66 Fed. 127; *Nat. Bank of Republic v. City of St. Joseph,* 31 Fed. 216.)

Mere changes in the form of a provision for the means of enforcement or payment of municipal obligations which do not prejudicially affect the rights of the holders of such obligations are valid. (12 C. J., p. 1014, sec. 640; Abbott, Pub. Securities, p. 857, sec. 433; *Babcock v. Middleton,* 20 Cal. 643; *Thornton v. Hooper,* 14 Cal. 9; *People v. Bond,* 10 Cal. 563; *In re Assessment for Local Impr. Sewer Dist. No. 1,* 84 Wash. 565, 147 Pac. 199.)

A contract cannot be said to be impaired by a change in the law which makes the remedy for its enforcement more efficient or more easy of application. (Black's Const. Law, pp. 746, 747; *Bernheimer v. Converse,* 206 U. S. 516, 27 Sup. Ct. 755, 51 L. ed. 1163; *Henley v. Meyers,* 76 Kan. 723, 93 Pac. 168, 173, 17 L. R. A., N. S., 779; *Bryson v. Mc-Creary,* 102 Ind. 1, 1 N. E. 55.)

Before it can be held that legislation impairs the obligation of a contract it must lessen the efficiency of the means whereby the holder of the obligation may receive his money or enforce his rights. (*Highway Dist. No. 1 v. Fremont County,* 32 Ida. 473, 185 Pac. 66; *Hendrickson v. Apperson,* 245 U. S. 105, 38 Sup. Ct. 44, 62 L. ed. 178; *Louisiana ex rel. Hubert v. New Orleans,* 215 U. S. 170, 30 Sup. Ct. 40, 54 L. ed. 144; *Seibert v. United States,* 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. ed. 1161; *State of Louisiana v. City of New Orleans,* 102 U. S. 203, 26 L. ed. 132; *Von Hoffman v. Quincy,* 4 Wall. 535, 18 L. ed. 403; *Dodd v. Miller,* 14 Ind. 433.)

The rate of interest is sufficiently prescribed and the resolution adopted by the drainage board complies with the law in this respect. (*Gist v. Rackliffe-Gibson Const. Co.,* 224 Mo. 369, 123 S. W. 921; *Cricket v. State,* 18 Ohio St. 9, on p. 21; 2 Words & Phrases, 2d Series, pp. 575, 576; C. S., sec. 4543.)

TAYLOR, J.—This proceeding was instituted by the board of commissioners of Drainage District No. 2, by petition, under the provisions of Sess. Laws 1925, c. 21, p. 29, to procure the ratification, approval and confirmation of an issue of bonds refunding two outstanding issues of bonds of the district, one in the sum of $480,500, bearing interest at seven per cent per annum, issued and dated August 1, 1920, and $40,000 in amount thereof maturing August 1, 1926, and a portion each year thereafter, the last on August 1, 1934, the other issue in the sum of $65,000, bearing six and one-half per cent interest, dated and issued August 1, 1922, and $3,000 in amount thereof maturing August 1, 1927,

and a portion each year thereafter, the last on August 1, 1940. All of these bonds were issued under the provisions of C. S., c. 179, art. 5, secs. 4540 to 4550.

The petition, filed February 19, 1925, states the matters required by section 4 of the act, and sets forth the resolution adopted and entered on the minutes February 16, 1925, to comply with section 3 of the act. This resolution specifies the amount and date of the bonds to be refunded, the amount of the refunding bonds proposed to be issued, and designates "the denomination or denominations thereof" as "in denominations of One Hundred, Five Hundred and One Thousand Dollars, in such proportion and amounts as may be most advantageous to said district and the sale of said bonds," fixing the date of issue as of August 1, 1925. With relation to fixing the rate of interest, the resolution provides that the bonds shall "bear interest at the lowest rate at which the same may be legally sold, and in no event to exceed interest at the rate of six per cent per annum."

The resolution made provision declaring the specific intent of the commissioners to issue bonds to refund the first issue of $480,500, "in the event there is any legal objection to the refunding of $65,000.00," the last issue. Due notice was given, and a hearing had before the court. The appellant appeared and filed objections to the ratification, approval and confirmation, reciting, as his interest in the subject matter, his ownership of real property within the district subject to assessment and lien of the bonds, and his ownership of one of the bonds of the first issue, "being dated August 1, 1920, and the principal thereof being due, according to the terms thereof, on August 1, 1931; said principal sum to bear interest from the 20th day of August, 1920, according to coupons attached to said bond, at the rate of 7% per annum, payable on the 1st day of February and the 1st day of August of each year, from 1920 until 1931."

Appellant objected upon the grounds:

(1) That, by refunding said bonds, the district would deprive him of the right to interest on his investment, as evidenced by said interest coupons.

(2) That the resolution adopted by the board of commissioners does not conform to the requirements of the law in "that the denomination, or denominations, of the bonds proposed to be issued is not therein designated, neither is the rate of interest said bonds are to bear fixed in said resolution."

(3) That said refunding bonds, if issued, "will be a lien and encumbrance upon and against protestant's said property for a greater length of time than the same will be encumbered by the present bond issue if paid and discharged according to the terms thereof, and that . . . . providing for the refunding of the present bond issue . . . . deprives protestant of his property without due process of law."

(4) That the original bond issue of August 1, 1922, has "not been outstanding for more than three years as required by" the refunding act, and said bonds are not subject to redemption according to the terms thereof, and that the bonds, if issued, will constitute a lien and encumbrance upon protestant's real property, and the moneys arising from the sale of said refunding bonds cannot be used for the purpose of paying and retiring that issue of bonds without the consent of the owners and holders of the bonds.

(5) That the act of 1925, and the issuance of said refunding bonds, impairs the obligation of the contract evidenced by said bond and coupons, and deprives him of his property without due process of law, in violation of the constitution of the United States and of the state of Idaho.

Findings of fact and conclusions of law were made, and a decree entered "that all proceedings had and taken by said drainage district and the commissioners thereof toward the refunding of the outstanding bonds . . . . be and the same are hereby in all things ratified, approved and confirmed"; that the drainage commissioners "are hereby authorized, empowered and directed to execute and negotiate said refunding bonds in the amount of $545,500 in denomi-

nations of $100, $500 and $1,000 each and in such propor-
tion and amounts as may be most advantageous to said dis-
trict and the sale of said bonds, the same to bear interest at
the lowest rate at which they may be legally sold or ex-
changed for par and accrued interest, and in no event to
exceed interest at the rate of 6 per cent per annum''; and
that the refunding bonds ''shall not be executed, issued or
negotiated . . . . except as the outstanding and unpaid
bonds of said district shall mature or be called and sur-
rendered.''

Appellant appeals from the whole of the decree, and re-
spondents, as cross-appellants, appeal from that portion de-
creeing that the refunding bonds authorized ''shall not be
executed, issued or negotiated . . . . except as the outstand-
ing and unpaid bonds of said district shall mature or be
called and surrendered.''

Cross-appellants contend that the court committed error
in concluding, as a matter of law, that two-fifths of the bond
issue of August 1, 1922, could not be called, ''represented
by bonds bearing the highest numbers in numerical order of
said issue, as to which portion of said bond issue the obliga-
tion of the contract will be impaired, if called and the inter-
est stopped prior to August 1st, 1927, as to the one-fifth
of said issue bearing the highest numbers, and prior to
August 1st, 1926, as to the one-fifth of said issue bearing
next to the highest numbers in numerical order.''

Sess. Laws 1925, c. 21, sec. 6, provides that, upon the
hearing of the petition, the court shall examine all the pro-
ceedings set up in the petition, and ''shall disregard every
error, irregularity or omission which does not affect the
substantial rights of any party.''

The commissioners had a right to fix any rate of interest
not more than six per cent. The proceeding is for the pur-
pose of announcing to those interested that the commissioners
propose to issue refunding bonds, and the resolution was
sufficient to apprise anyone interested that the bonds pro-
posed might bear interest as high as six per cent. The court
had a right to consider all the facts shown, and determine

that, even at the highest rate allowed of six per cent, the refunding would be of benefit to the district or property owners. The failure to fix an exact rate of interest was an irregularity which did not affect the substantial rights of any party. The same admonition of the law is binding upon us, to disregard this irregularity. This act must be construed with the provisions of C. S., title 34, c. 179, providing for drainage districts, and with the intent of C. S., sec. 4555, which provides:

"The provisions of this title shall be liberally construed to promote the public health and welfare by reclaiming wet or overflowed lands, building embankments or levees and the preservation of any system of drainage heretofore constructed or to be constructed according to law."

The court in *Hillsborough County v. Henderson* (Fla.), 33 So. 997, in considering a resolution authorizing a bond election, held that a resolution authorizing bonds "bearing interest at a rate of not more than four per centum per annum," under an act which provided that the resolution should determine the rate of interest to be paid on the bonds, did not determine the rate of interest which the bonds should bear, and was fatally defective. That case has been often cited, most often to be distinguished, but rarely followed. There are two lines of decisions in matters such as this, one holding to strict and literal compliance, the other that only a substantial compliance with the statutes is necessary. Our statutes seem to admonish the latter even if we were inclined to hold otherwise. This has been the construction placed upon similar provisions by many courts in matters wherein the facts would seem to require as much or more strictness than herein. Our holding that the statement of the resolution as to the rate of interest did not invalidate the proceedings, seems in harmony with the law as well as with the majority of decisions. (*Cole v. City of Los Angeles*, 180 Cal. 617, 182 Pac. 436; *First Nat. Bank v. City of Laramie*, 25 Wyo. 267, 168 Pac. 728; *Schooley v. City of Chehalis*, 84 Wash. 667, 147 Pac. 410; *City of Cheyenne v. State*, 17 Wyo. 90, 96 Pac. 244; *State v. City of Topeka*, 68

Kan. 177, 74 Pac. 647; *State v. Smith,* 302 Mo. 594, 259 S. W. 1060; *Harris v. City of Morganfield,* 201 Ky. 588, 257 S. W. 1032.)

The designation of the denomination or denominations of the bonds as of $100, $500 and $1,000, ''in such proportion and amounts as may be most advantageous to said district and the sale of said bonds,'' if irregular at all, falls under the same rule of construction. The added portion quoted may be regarded as surplusage. The law does not specify that the proportion of each be designated.

The law, when these bonds were sold, provided a method of payment dependent upon assessments. The district could levy assessments for the payment of outstanding bonds not exceeding twenty per cent per annum. Under such provision, the district could not have raised, by August 1, 1925, over sixty per cent of the amount of the bonds issued August 1, 1922.

C. S., sec. 4548, in effect when the bonds were issued and now the only provision for calling them at the end of three years, provides:

''It shall be the duty of the treasurer of any county in which there may be a district issuing bonds under the provisions of this chapter whenever he has upon hand $5,000 of the special fund for the payment of said bonds, and when said bonds shall have run for a period of three years, to advertise in the newspaper doing the county printing, for the presentation to him for payment of as many of the bonds issued under the provisions of this chapter as he is able to pay with the funds in his hands, to be paid in numerical order of said bonds, beginning with the bond number one, until all of said bonds are paid: *Provided,* That 30 days after the first publication of said notice of the treasurer calling in any of said bonds, said bonds shall cease to bear interest.''

The act of 1925 does not alter the method of calling outstanding bonds which have run for a period of three years. As a part of the body of the bond is the recital:

"This bond is subject to redemption in numerical order by the Treasurer of Ada County whenever he has upon hand $5,000 of the special fund for the payment of said bonds, after said bonds shall have run for a period of three years, upon the giving of notice thereof in the manner provided by law."

That provision, as a part of the law under which the bonds were issued, as well as incorporated in the bonds, became and was a part of the contract of the bondholders. To provide a call of the treasurer without having funds in his hands to pay the bonds called, or to issue the call for the last issue before August 1, 1925, would be in violation of the rights of the bondholders and impair the obligation of their contract. The holders of those bonds for which funds could not be raised by the existing statutes earlier than the fourth or fifth year, by a maximum 20 per cent levy, or, as the court found, the two-fifths of the issue of 1922, have a right to depend upon the law as it was when the bonds were issued. They had a right then to expect that those bonds could not and would not be redeemed in three years, or in less than four and five years, and to change the method of payment so that they could be called earlier impairs the obligation of their contract. The court was, therefore, correct in its conclusion as to that portion of the issue of August 1, 1922.

Section 2 of the act provides two options to the district, one to issue and sell bonds for the purpose of paying and redeeming outstanding bonds, and to "call and pay said bonds," the other to authorize the issue of sufficient bonds to pay and redeem the whole of such outstanding bonds, but to issue and sell them in such amounts, from year to year, as will pay and redeem the outstanding bonds falling due each year, and continue to issue and sell such refunding bonds until the whole of the outstanding bond issue which is refunded is paid and redeemed.

Section 7 of the act provides that the bonds may be exchanged dollar for dollar, or sold and the proceeds applied to refunding the outstanding issue.

The board had a right to exercise its option, also, to sell and not exchange. This they have already done by the resolution, for by providing that the interest shall be fixed by a sale, they have excluded any exchange, upon which an interest rate could not be arrived at in the manner set forth therein. The parties stipulated, as evidence, the intention of the petitioners—

"That in the event the petitioners are authorized to issue and negotiate refunding bonds herein sought to be refunded, that said petitioners intend to and will first advertise said bonds for sale and invite bids therefor, and if the same can be advantageously sold, that the same will be delivered as of August 1st, 1925, for par and accrued interest, and they intend to have such of the bonds of said district as are now outstanding, and have been outstanding and unpaid for more than three years, called by the Treasurer of Ada County, Idaho, for payment with the proceeds of said refunding bonds as of August 1st, 1925, it being the intention of petitioners by so doing to stop the payment of interest on said outstanding bonds as of said date, and prior to the commencement of the accrual of interest on the refunding bonds."

This may now have become impossible by lapse of time.

One trouble with the stipulated intention and the decree of the court is that the board was apparently attempting to exercise the first option given to it, while the decree of the court forces upon it the second option, which it was not attempting to exercise.

Another weakness of the present decree, and also of the plan shown by the stipulated intention, is that the board cannot call the old bonds until there are funds on hand to pay them, nor would such a call without funds obligate the bondholders to deliver up their bonds, nor stop the interest. It is sufficient to say that the treasurer cannot call the outstanding bonds until he has $5,000 or more on hand, enough to pay the bonds in serial as called, and in case all are called, then funds to pay them all, nor call the issue of August 1, 1922, until on or after August 1, 1925, when they will have

been outstanding three years, without violating the rights of the present bondholders.

The restriction that the bonds shall not be executed, issued or negotiated, except as the outstanding and unpaid bonds of said district shall mature or be called and surrendered, creates a quite impossible condition in any event. If the refunding bonds cannot be executed, issued or negotiated before the outstanding bonds mature, the funds will not be available to redeem them at maturity, if not before called and surrendered; the funds cannot be used at all, because the other bonds cannot be called, and would not be surrendered until funds are available to pay them. But if the new bonds are to be actually sold to raise the money, and the money actually received in hand in the fund on which to base a call of the old issue, there will be a period in which both issues will be outstanding, the former concededly a lien and the latter decreed to be such, although, of course, it cannot be permitted to impair the contract obligation and security of the former.

Ordinarily, and probably by the weight of authority, the issuance of refunding bonds is not considered the creation of a new debt, because such an act contemplates an exchange of the new obligations for the old, and a simultaneous cancelation of the old bonds. It is especially true that such refunding may take place, and does not constitute the creation of a new debt, where the old obligations are canceled before the new take effect. (*In re Application of State to Issue Bonds,* 33 Okl. 797, 127 Pac. 1065; *State v. West,* 29 Okl. 503, 118 Pac. 146; *Board of Commrs. v. Standley,* 24 Colo. 1, 49 Pac. 23; *Ewert v. Mallery,* 16 S. D. 151, 91 N. W. 479; *Hyde v. Ewert,* 16 S. D. 133, 91 N. W. 474; *State v. Weinrich,* 291 Mo. 461, 236 S. W. 872; *Gaulbert v. City of Louisville* (Ky.), 97 S. W. 342; *Independent School District v. Rew,* 111 Fed. 1, 49 C. C. A. 198, 55 L. R. A. 364.)

A respectable line of authorities, by what appears sound reasoning, reaches the same conclusion, even where there is such interim between the sale of the refunding bonds and the redemption of the old issue. (*In re Menefee,* 22 Okl.

365, 97 Pac. 1014; *Board of Commrs. v. Rollins,* 9 Wyo. 281, 62 Pac. 351; *City of Los Angeles v. Teed,* 112 Cal. 319, 44 Pac. 580; *City of Poughkeepsie v. Quintard,* 136 N. Y. 275, 32 N. E. 764; *National Life Ins. Co. v. Mead,* 13 S. D. 37, 79 Am. St. 876, 82 N. W. 78, 48 L. R. A. 785.)

This court said, in *Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785, that the drainage district law was an exercise of the power of the state for the general welfare. In *Burt v. Farmers' Co-operative Irr. Co.,* 30 Ida. 752, 168 Pac. 1078, this court quoted with approval from *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369:

"If it be essential or material for the prosperity of the community, and if the improvement be one in which all the landowners have to a certain extent a common interest, and the improvement cannot be accomplished without the concurrence of all or nearly all of such owners by reason of the peculiar natural condition of the tract sought to be reclaimed, then such reclamation may be made and the land rendered useful to all and at their joint expense. In such case the absolute right of each individual owner of land must yield to a certain extent or be modified by corresponding rights on the part of other owners for what is declared upon the whole to be for the public benefit," and further said:

"Having determined that the public welfare requires the organization of drainage systems, the legislature has provided the means by which they may be organized and the agencies through which they shall perform their functions. The drainage districts provided for are *quasi* corporations, being public in their nature and designed to accomplish purposes conducive to the general welfare. . . . . (*Reclamation Dist. No. 70 v. Sherman,* 11 Cal. App. 399, 105 Pac. 277.)"

The legislature has power to compel such subordinate *quasi* or public corporation to incur liabilities, or to provide for the payment of indebtedness. (Abbott on Public Securities, sec. 347; *Van Pelt v. Bertilrud,* 117 Minn. 50, 134 N. W. 226; *Rice v. Shealy,* 71 S. C. 161, 50 S. E. 868; *New York Life Ins. Co. v. Board of Commrs.,* 106 Fed. 123, 45 C. C. A. 233.)

We conceive that if there is no constitutional prohibition, the legislature would have the power to prescribe that drainage districts paying seven per cent or six and one-half per cent interest upon outstanding bonded indebtedness, should proceed to refund such bonded indebtedness, and for that purpose should issue and sell bonds, even though the act provided that, during the interim between the issuance and sale of the refunding bonds and the redemption of the outstanding issue, both issues were made a lien upon the property, it being conceded that the money received for the refunding issue is required to be devoted exclusively to redemption of the outstanding issue, thus, as each bond is redeemed, reducing the amount of the lien, the district at all times having on hand whatever money was received from the refunding sale to apply upon the former issue. Then, if there is no constitutional prohibition, the legislature may likewise, instead of requiring such refunding, permit it, and, by permissive legislation, make the same provisions; and, as to the wisdom of such legislation, this court, as a coordinate branch of the government, can make no inquiry.

This court held, in *McGilvery v. City of Lewiston*, 13 Ida. 338, 90 Pac. 348, that the expense of construction in an improvement district, secured by a lien upon the property itself within the district, is not the creation of an indebtedness within the prohibitions of Const., art. 8, sec. 3, and, in *Butler v. City of Lewiston*, 11 Ida. 393, 83 Pac. 234, that bonds issued to fund outstanding warrants do not increase the legal indebtedness of a city. See, also, *Byrns v. City of Moscow*, 21 Ida. 398, 121 Pac. 1034.

"The issue of a refunding bond does not generally create a new indebtedness, and it is so held by the great weight of authority, but it simply changes the form of the indebtedness and usually reduces the rate of interest. There is no presumption that the officers of a municipality will not make proper application of the funds procured from the sale of refunding bonds." (*Veatch v. City of Moscow*, 18 Ida. 313, 21 Ann. Cas. 1332, 109 Pac. 722.)

We have not been cited to nor have we found any constitutional or statutory inhibitions, such as construed in those cases which hold to the contrary, against making the provision for the issuance and sale of refunding bonds, as contemplated by chapter 21, even though, during a period between the sale of the refunding bonds and receipt of the money and the ultimate call and redemption of the outstanding issue, there exists a double lien upon the property of the land owners. Bearing in mind that the proceeds of the refunding sale are especially applicable to the redemption of the outstanding issue, around which, of course, all due safeguards should be and are thrown, if the legislature, in its wisdom, has determined that this is the way its purpose of requiring or permitting the outstanding issue to be refunded is to be accomplished, it had the power to do so. (*Byrns v. City of Moscow, supra.*)

The same answer may be made to the contention of appellant that the lien upon his property is extended for a longer period, by issuing refunding bonds, than it would have continued under the old issue of bonds: That the legislature had the power so to provide, and that, if any right has been infringed upon, such right "must yield to a certain extent or be modified by corresponding rights on the part of other owners for what is declared upon the whole to be for the public benefit."

That part of the decree hereinafter italicized, that the bonds shall bear interest at the lowest rate at which they may be legally sold *or exchanged for par and accrued interest,* is ineffectual and not contemplated by the resolution of the board, for, to establish the interest rate, the bonds must be sold; then to exchange them without selling them, at a rate for exchange purposes, would be contrary to the resolution.

As to those bonds which have been outstanding for over five years, and that portion of the issue of 1922 which will have been outstanding three years on August 1, 1925, and for all of which the district could, by a twenty per cent levy, have raised funds for their payment, there will be no

41 Idaho—26

impairment of the obligation of the contract of the holders by refunding them. The provision of other methods for raising the money to pay bonds does not impair the obligation of the contract, so long as the security or the existing methods of providing the funds are not impaired. (*Highway District No. 1 v. Fremont County*, 32 Ida. 473, 185 Pac. 66.)

Appellant's contention that, by refunding the old issue, he will be deprived of interest on his investment, evidenced by his interest coupons, is without merit. (*National Bank of the Republic v. City of St. Joseph*, 31 Fed. 216.)

It follows that the judgment must be reversed, with directions to the trial court to make findings and conclusions in accordance herewith, and enter judgment, in accordance herewith, authorizing the execution, negotiation and sale of refunding bonds in the amount recited in the resolution, less the amount of two-fifths of the issue of 1922, which cannot yet be called. It is so ordered. No costs awarded.

William A. Lee, C. J., and Givens, J., concur.