[No. 11880.   In Bank. — March 30, 1888.]

SAMUEL DAVIS, APPELLANT, v. COUNTY OF YUBA, RESPONDENT.

BONDS — ROAD BONDS OF YUBA COUNTY — TIME OF PAYMENT — ACT OF MARCH 28, 1872. — Bonds issued by the county of Yuba in pursuance of the act of March 28, 1872, for the purpose of constructing, repairing, and improving wagon-roads and bridges within the county, cannot be paid by the county, without the consent of the holders, prior to the expiration of twenty years from the date of their issue, except in the manner and from the fund provided for in the statute; and an attempt by the county to make a prior payment thereof from a different fund is ineffectual as against a non-consenting holder.

ID. — COUPONS — INTEREST. — The coupons on such bonds, after they become payable, bear interest from the time they are presented to the county treasurer for payment.

APPEAL from a judgment of the Superior Court of Yuba County, and from an order refusing a new trial.

The facts are stated in the opinion of Mr. Chief Justice Searls.

*W. C. Belcher,* for Appellant.

*A. L. Hart,* and *E. A. Forbes,* for Respondent.

The COURT.—A rehearing was granted and the case resubmitted.

After carefully considering the matter, we still adhere to our former opinion, except that we think the plaintiff should recover interest on his coupons from the time he presented them to the county treasurer for payment.

Judgment and order reversed, and a new trial ordered.

The following is the opinion above referred to, rendered in Bank on the 25th of May, 1887:—

SEARLS, C. J.—This action was brought to recover five thousand six hundered dollars and interest, alleged to be due upon coupons attached to certain bonds issued by the county of Yuba, under an act of the legislature entitled "An act to authorize the county of Yuba to issue sixty thousand dollars of bonds for the purpose of constructing, repairing, and improving wagon-roads and bridges in said county of Yuba," approved March 28, 1872. The cause was tried by the court, and written findings filed, upon which judgment was entered in favor of plaintiff for four hundred dollars, being for the interest on bonds from the first day of January, 1882, to and including March 30, 1882. Plaintiff appeals from the judgment, and from an order denying a new trial.

If defendant, the county of Yuba, had a right under the law and by virtue of their contract with the bond-holders, of whom the plaintiff was one, to pay off the bonds in question on the thirtieth day of March, 1882, the judgment of the court below is correct, and should be affirmed. If, on the other hand, the bonds could not, without the consent of the holders, be paid until the expiration of twenty years from the date of their issue,

the court below erred in refusing to render judgment in accordance with the prayer of the complaint.

The act of March 28, 1872 (Stats. 1871–72, p. 662), so far as is necessary to the consideration of this case, reads as follows:—

"Section 1.   The board of supervisors of the county of Yuba, in the name of said county, are hereby authorized, empowered, and directed to make, execute, and issue, from time to time as it shall become necessary, not to exceed sixty thousand dollars of bonds of said county.

"Sec. 2.   Such bonds shall be issued in denominations of one thousand dollars each, and be payable in twenty years from the first day of January, 1873, and shall bear interest at the rate of eight per cent per annum, payable semi-annually on the first day of July and January of each year.   Said bonds and interest shall be payable at the office of the treasurer of said county in United States gold coin.   Such bonds shall be signed by the chairman of the board of supervisors, countersigned by the county auditor, and indorsed by the treasurer of said county. Forty coupons shall be attached to each bond, and numbered consecutively, and shall express the amount of interest due at such payment, and shall be signed in the same manner as the bonds are required to be signed. . . . . The said chairman of said board of supervisors, county auditor, and treasurer shall proceed to dispose of said bonds for the best sum or price in gold coin of the United States they can procure;  provided, that they shall not sell or negotiate the said bonds at less than eighty cents gold coin on the dollar.

"Sec. 4.   The said board of supervisors shall each year, previous to the making out the duplicate or general assessment list for said county in each year, levy a tax, to be styled the 'Yuba County Wagon-road and Bridge Interest and Sinking-fund Tax,' and sufficient to raise the amount of interest required to be paid; and *in ten years after the issuing of said bonds they shall levy a*

*tax for each and every year, to liquidate and pay said bonds, in ten years, that shall then remain unpaid.* The said taxes shall be levied and collected in the same manner as the general taxes for county purposes, and when collected, shall be paid to the county treasurer, to be kept in a separate fund, to be known as the 'Yuba County Wagon-road and Bridge Interest and Sinking Fund,' to be by him applied to the payment of the interest as herein provided, and for the redemption and payment of said bonds, under the direction of the board of supervisors.

"Sec. 5.   The said board of supervisors of said county shall make arrangements for the payment of the interest on said bonds when the same shall become due at least thirty days before the time of payment; and in the event said Yuba County Wagon-road and Bridge Interest and Sinking Fund is insufficient, the said treasurer shall draw on the general fund of said county for said purpose; and in the event these funds prove inadequate, the said board of supervisors are hereby authorized to make such contracts and arrangements or loans as may be necessary for payment of said interest, and the protection of the faith of said county.

"Sec. 6.   Whenever, at any time after the payment of the July interest of said bonds, there shall be *in the funds so raised for the payment of the principal and interest of said bonds* a sum of money amounting to *five thousand dollars over and above the amount required for the payment of the annual interest,* the said board of supervisors shall advertise, in one or more public newspapers published in the counties of San Francisco and Yuba, for a period of four weeks, for sealed proposals for the redemption of said bonds; and ten days from the time of the expiration of the time for such publication the said board of supervisors shall open said sealed proposals, and the said treasurer shall pay and liquidate, so far as the funds then on hand shall extend, such bonds presented under said proposals as shall have the lowest

value proposed, at which day they may be liquidated; provided, there shall be no proposals for less than par value, then the payment of said funds on hand shall be made on said bonds according to the number of their issue, of which the board of supervisors shall give four weeks' notice of the number of bonds to be so paid, after which time said bonds shall cease to bear or draw interest."

The county issued its bonds for the full amount authorized by the act, and sold them. The bonds all bore date January 1, 1873, and were made payable twenty years after date, with interest at eight per cent per annum, payable semi-annually. Plaintiff was the owner of the coupons of twenty of these bonds (for one thousand dollars each), for the years 1882, 1883, 1884, and the first half of 1885, upon which he demanded payment July 2, 1885, all of which was refused.

The provisions of the statute are to be read in connection with the bonds. They constitute a part of the contract entered into between the county and the bondholders, and all persons acquiring possession or ownership of the bonds, or any of them, must be deemed to have done so with full knowledge of all the stipulations contained in the statute, precisely as though these provisions were embraced in the bonds themselves. Viewed in this light, it is apparent that the bonds were payable absolutely, and in any event, at the end of twenty years from the first day of January, 1873. The board of supervisors was required to levy a tax each year, to be styled the "Yuba County Wagon-road and Bridge Interest and Sinking-fund Tax." This tax was required to be sufficient in amount to meet the interest, which was payable semi-annually. If, after the payment of the July interest in any year, there remained in this interest and sinking fund a sum of money equal to five thousand dollars over and above the amount required to pay the annual interest, it was to be paid upon the principal

in the manner provided by the statute. To the extent of the means on hand thus raised, and in such fund, there can be no serious doubt but the county had a right to extinguish its bonds. It was so nominated in the law, and had the resources of that fund thus accumulated been sufficient to pay the bonds in full at the payment of the July interest, they could have been extinguished.

The further provision requiring an annual tax after ten years to pay off the principal of the bonds remaining unpaid need not be considered, except as it may tend to throw light upon the questions presented, for the reason that the attempted payment occurred before the time for action, under that clause of the statute, had arrived.

The question still remains, Had the board of supervisors a right to resort to other and independent means, such as issuing new bonds under sections 4048 to 4052, inclusive, of the Political Code, and by placing the means thus raised in the sinking fund, to pay off the bonds of plaintiff against his consent? Respondent concedes that these bonds are contracts of which the act under which they were issued forms a part, and the obligations of which cannot be impaired by subsequent legislation. His contention is, that it was the purpose of the legislature, by the act of March 28, 1872, to give to the county of Yuba twenty years within which to make payment of said bonds if it so desired, and at the same time to confer upon the county authority to make payment thereof at any time within that period, provided sufficient funds were in the hands of the officers of the county with which to make such payment. We cannot so construe the act of March 28, 1872.

As before stated, the bonds were dated January 1, 1873, and purported on their face to have twenty years to run. The holder could not enforce payment before the expiration of this last period. For ten years the

supervisors were required to levy a tax sufficient to pay the interest, and at the end of ten years they were required to levy such tax for each and every year of the remaining ten years as would be sufficient to pay principal and interest by the time the bonds fell due. The board of supervisors was authorized by section 6 of the act, "whenever, at any time after the payment of the July interest of said bonds, there shall be in the funds *so raised for the payment of the principal and interest* of said bonds a sum of money amounting to five thousand dollars, over and above the amount required for the payment of the annual interest," etc., to pay such sum on the principal of the bonds in the manner by the act provided. A sum of money thus raised, and in the fund, was the condition upon which any of the bonds could be paid before the expiration of twenty years. If the bonds were due, it could make no difference to the holder from what fund he was paid; but the very question here is, Were they due? The ten years had not expired, and there could not have been in the treasury any sum of money raised for the payment of principal, because no tax could be levied therefor until the end of ten years. What the board of supervisors did in fact do was to raise funds by the issue and sale of other bonds, for the payment of those we are considering.

We are of opinion the purchaser of these bonds had a right to hold and collect interest on them for twenty years, subject to the contingency provided in the statute under which they were issued of having them paid sooner, if the fund therein provided for should prove adequate to that end. This was a contingency which the purchaser could estimate, and which might well become an important factor in determining the value of the offered security. It was a part of his contract, and he had a right to rely upon such contingency as the only one under which the term of his investment could be curtailed.

It follows that plaintiff was entitled to recover according to the prayer of his complaint.

The judgment and order appealed from are reversed, and a new trial ordered.

SHARPSTEIN, J., THORNTON, J., TEMPLE, J., McKINSTRY, J., and McFARLAND, J., concurred.