BALLARD-HASSETT COMPANY, Appellant, v. CITY OF DES MOINES et al., Appellees.
No. 38671.

FEBRUARY 14, 1928.

OPINION ON REHEARING APRIL 5, 1929.

1353

*William L. Hassett,* for appellant.

*Charles Hutchinson, F. T. Van Liew, Theodore Mantz,* and *Stipp, Perry, Bannister .& Starzinger,* for appellees.

EVANS, J.—The city of Des Moines in 1923 issued street improvement bonds to the approximate amount of $616,000, under the provisions of Chapter 8, Title V of the Code of 1897, and in conformity with Section 751 of the Supplemental Supplement of 1915. They were in denominations of $1,000, and were 616 in number. The plaintiff is the owner of Bond No. 616. The more formal parts being omitted, the following is a copy of his bond:

"The city of Des Moines, in the state of Iowa, promises to pay as hereafter stated to the bearer hereof on the 1st day of May, 1942, *or at any time prior thereto at the option of said city,* the sum of one thousand dollars ($1,000.00), with interest thereon at the rate of six (6) per cent per annum, payable annually on the presentation and surrender of the interest coupons hereto attached. Both principal and interest of this bond are payable at the office of the city treasurer in the city of Des Moines, state of Iowa. This bond is issued by the city of Des Moines, Iowa, under and by virtue of Chapter 8 of Title V of the Code of Iowa and the resolution of said city duly passed on the 25th day of June, 1923.

"This bond is one of a series of bonds of like tenor, date and amount, numbered from one (1) to six hundred sixteen (616), and issued for the purpose of defraying the cost of extending, widening, grading and otherwise improving Chestnut Street, now known as Keosauqua Way, as described in said resolution, in said city, which cost is payable by the abutting and adjacent property, as embraced in the assessment district created and established by the resolution of necessity, duly adopted by the city council of the city of Des Moines, Iowa, under and in conformity with Section 751 of the Supplemental Supplement to the Code of Iowa, 1915, and is made by said law a lien on all of said abutting or adjacent property and is payable in twenty (20) annual installments, with interest on all deferred payments at the rate of six (6) per cent per annum, and *this bond is payable only out of the special assessment fund*

created by the collection of said special tax, and said fund can be used for no other purpose.

"And it is hereby certified and recited that all the acts, conditions and things required to be done precedent to and in the issuing of this series of bonds have been done, happened and performed in regular and due form, as required by said law and resolution; and for the assessment, collection and payment hereon of said special tax the full faith and diligence of the said city of Des Moines, Iowa, are hereby irrevocably pledged."

The petition alleges, and the answer admits, that the defendant city is about to issue $400,000 of refunding bonds, pursuant to present provisions of the statute (Chapter 115, Acts of the Forty-first General Assembly), and that it proposes to use the proceeds of such refunding bonds as far as necessary to the retirement of the first issue. The prayer of the petition is that the city be enjoined from pursuing such refunding process. The contention of plaintiff is that, inasmuch as his bond was payable out of a specific fund, it may not without his consent be paid before its due date with money obtained from any other source. He contends further that Chapter 115, Acts of the Forty-first General Assembly, having been enacted after the issue of the bonds, may not be made available to the defendant as against a holder of such bond.

It will be noted from a perusal of the bond that it is drawn payable "the 1st day of May, 1942, or at any time prior thereto at the option of said city." As against this specific proviso, the plaintiff brings forward the later provision therein that the bond is to be payable out of a specific fund, and contends that the due date may not be accelerated by mere option of the city, except to the extent that the bond may be paid out of the accumulations of such fund. And such is the purport of the argument. The question presented to us is one of construction of the terms of the bond and of the statute pursuant to which it was issued.

By the express terms of the bond, it is payable on May 1, 1942, "or at any time prior thereto," at the option of the said city. This is equivalent to making the same payable *on or before* May 1, 1942. There is no room for dispute as to the construction of the language of the bond at this point. The appellant contends, in effect, that the foregoing proviso of the bond is

negatived, or at least qualified, by the later provision that the bond is "payable only out of the special assessment fund," etc. Is the latter proviso an affirmative undertaking on the part of the city that the bond shall not be paid before May 1, 1942, except out of such fund? Or, on the other hand, is it a reservation in favor of the city and for the protection of the city against personal liability for the payment thereof? Is this proviso an *addition* to the rights of the plaintiff thereunder, or is it a *subtraction* therefrom? There was no "promise to pay" the bond on the part of the city. The absence of a "promise to pay," and the express limitation upon the rights of the obligee under the bond, are parts of the same thing. Nothing more was pledged to the obligee of the bond than the proceeds of the special assessment. Does it follow from that fact that the bond might not be discharged by actual payment "at any time prior" to the due date? The question may be simplified by an illustration: Suppose an owner of property should execute a mortgage thereon for the security of an obligation, due on or before a given date, and should stipulate that the mortgagee should look to the proceeds of the property solely for payment of his debt without any personal liability on the part of the mortgagor. Could the mortgagor demand a discharge of his property from the lien by paying the debt? Or could the mortgagee resist such demand by insisting that the property be sold and that the proceeds thereof be paid to him? The answer is quite self-evident. If there is any distinction in principle between such a case and the case before us, we are unable to discern it.

It is true that, under this bond, the rights of the bondholder were wholly *in rem*. It contained no "promise to pay" by any person or entity. There was no personal liability even on the part of the owner whose property was assessed therefor. But such property owner was directly interested in the payment thereof, as a means of discharging his property from the lien. This lien was distributed in each case in 20 annual installments. But under the statute, the property owners were not bound to defer payment for 20 years on any installment. Concededly, any or all of the property owners could have paid the total assessment upon any tax-paying date. An option rested, therefore, with the property owners at all times to act collectively and to retire the entire bond issue. The option granted to

the city of Des Moines is consistent with such right of the property owners', whether we view the city as a representative of the property owners or whether we view it as having a possible interest of its own in the exercise of such option. The city issued the bond and guaranteed its legal validity. Though it did not "promise to pay," it did incur an obligation that might become converted into a money demand. See *Hauge v. City of Des Moines*, 207 Iowa 1209, and *Ft. Dodge Elec. L. & P. Co. v. City of Ft. Dodge*, 115 Iowa 568. If the collectibility of the bond should become doubtful through defects of legal procedure for which the city was responsible, then the city might well be deemed to have a direct interest in providing for the collection of the bond and in accelerating its maturity.

It is argued that the defendant city formulated the bond and selected its phraseology, and that, therefore, the terms of  the bond should be construed most favorably to the holder thereof. The premise is faulty. The phraseology of the bond conforms to Section 843 of the Code of 1897. This section provides:

"Said bonds * * * shall be substantially in the following form, but *subject to changes that will conform them* to the ordinance (or resolution) of the council, to wit: The city of ———— ————, in the state of Iowa, promises to pay as hereinafter stated, to the bearer hereof, on the ——— day of ————, the sum of ———— dollars."

The optional provision inserted in the bond was fairly within the permission of this section. This optional proviso is not ambiguous. It cannot be said, therefore, that it presents a  question of doubt, to be solved against the city. The bond must be construed in all its terms, and in the light of other existing statutory provisions. The right of a holder of paper to refuse tendered payment and to insist upon payment of interest to a future date according to its terms is incontrovertible. But such asserted right should be evidenced upon the face of his paper. It is an express right, if any, and not an implied one. We know no rule of construction that would imply it when it is not expressed, or would solve substantial doubt in its favor.

The appellant challenges the constitutionality of Chapter 115, Acts of the Forty-first General Assembly. This legislation

was enacted subsequently to the issuance of the bond in question.  This is the legislation pursuant to which the city procures the funds which are to be used in the retirement of the plaintiff's bond. This procurement of funds is for the benefit of the property owners, and is charged to their property as a lien. The attacking argument is that, except for this legislation, the city could not have procured the means to retire the bonds; that the legislation, therefore, is an impairment of the vested rights of the bondholder. The argument is not sound. The right of the bondholder is neither greater nor less because of this legislation. Such right, as already indicated, must be determined by the terms of its bond. If we correctly construe the terms of the bond as giving an option to the city to accelerate the due date, then no vested right of the bondholder's is violated by the exercise of such option. It is true that, if the city had not been able to procure the funds for the purpose of exercising the option, it could not have exercised it. It is doubtless true, also, that the bondholder had a right to speculate upon the improbability of the exercise of such option, and that such speculation may be disappointed by the subsequent legislative power conferred upon the city; but no vested right of the holder's was thereby violated. It is frequently true that, in transactions between creditor and debtor, unlooked-for circumstances may occur which operate to the detriment of one or the other, but which violate none of the rights of either. These may disable a solvent debtor from paying his debt when due, and the creditor may benefit thereby in the way of accruing interest for many months, which he would not otherwise have received. Likewise, it may happen that the maker of a note payable ''on or before'' may, through circumstances unexpected by either maker or payee, find himself able to pay immediately, and the payee thereby lose a desirable investment. Such circumstances are purely adventitious. They enter as a possibility into every transaction, and are in no sense an infringement upon vested rights. There is nothing in the terms of the legislation which is assailed which purports in any manner to interfere with any right vested in the holder of this bond. The case is simply one where the city had an option, which it would not have exercised *if it could not*. Whether it *could*, might not be foreseen either by the city or by

the bondholder. The one had a right to hope that it *could,* and the other that it *could not.* The option proviso may have been incorporated for the very purpose of enabling the city to take advantage of such eventualities as might occur. If the city had then the right to so stipulate, it clearly has the same right now to avail itself of the stipulation. We are of opinion that no vested right of appellant's is in any manner infringed by the legislation complained of.

A further suggestion may be made at this point. Appellant's contention that it may refuse payment from any other source than the assessment fund is a strained one. It is true that its only right was *in rem.* The only remedy available for enforcement of its right was the sale of the property and the turning of the proceeds to the bondholder. This may be termed the extreme right of remedy. The real expectation of the bondholder was that the owner of the property would find it to his interest to pay the assessment. The bondholder looks to such property owner for the payment of its bond, though it has no promise from him. Such moneys so paid the bondholder by the property owner are not necessarily or usually the proceeds of the *res* (or *rem*). May the bondholder inquire of the property owner the source of the money which he brings to pay his assessment? May he reject it because it does not come from the proper source? If all the property owners, acting collectively, borrow $400,000 for the purpose of paying their combined assessments, may their tender be rejected because the money in their hands comes from another source than the proceeds of the sale of the assessed property?

Indeed, appellant does not contend that it may inquire into the source from which the property owner receives the money with which he pays his assessment. On the contrary, it concedes that the property owner may pay his assessment upon any tax-due date. Its contention is narrowed down to the proposition that the city may not cause such payment to be made by the use of funds borrowed upon refunding bonds. But both the practical and the legal effect of the action of the city in the premises is precisely the same as though the bondholders had collectively done the very thing which the city is doing for them. So that, from whatever point we view the case, we come back to the initial question: Does the bond by its terms permit the city to accelerate the due date?

In support of its position, the appellant relies for authority upon *Sheneberger v. Union Cent. Life Ins. Co.*, 114 Iowa 578; and *Lasher v. Union Cent. Life Ins. Co.*, 115 Iowa 231. In those cases we had occasion to consider an acceleration clause. The same clause was involved in both cases. The obligation was drawn payable at a fixed date, with a conditional proviso for the privilege of partial payments before such due date. The condition imposed upon the exercise of such privilege was that the payment should not be made with money borrowed elsewhere. The maker of the note undertook to pay the same before the due date by the use of borrowed money; whereas the defendant company insisted upon its due date, and was sustained in its contention. The note in that case was not drawn payable "on or before," but was payable upon a fixed future date. The only proviso for earlier payment was the conditional one herein set out. The maker of the note sought to avoid such condition. To eliminate the condition was to eliminate the only proviso in the note permitting acceleration. Without such conditional proviso, there was no proviso at all for the acceleration. Appellant relies also upon *Davis v. County of Yuba,* 75 Cal. 452 (13 Pac. 874, 17 Pac. 533), and *Sebern v. Cobb,* 41 Ida. 386 (238 Pac. 1023). Each of these cases involves the construction of a statute. If the statutes thus construed were identical with ours, and were construed in accordance with appellant's contention, even so we could not avoid the responsibility of construing our own statute by merely following a precedent from another state. We should be justified in following such precedent only in the event that we approved it as a proper construction of our own statute. But the statutes involved in those cases were not identical with ours; nor did either of them have any provision corresponding to the decisive provision in our statute which gave to the city the option to accelerate the due date at any time.

It is our conclusion that the appellant has no legal ground of complaint under its bond.

The judgment of the court below is, accordingly,—*Affirmed.*

STEVENS, FAVILLE, MORLING, and GRIMM, JJ., concur.

KINDIG, J., not participating.

WAGNER and DE GRAFF, JJ., dissent.

WAGNER, J. (dissenting).—Prior to January 1, 1923, the

defendant city began the improvement of a street known as "Keosauqua Way." The cost of the improvement, in the amount of $616,000, was paid by the proceeds of the sale of bonds, secured by an assessment upon the property abutting upon said street. The bonds matured serially. The plaintiff is the owner of Bond No. 616. The issue of which plaintiff's bond is a part was sold to the Iowa National Bank of Des Moines, Iowa, on July 2, 1923, for a premium of $5,700, and the plaintiff paid for his bond, at the time of his purchase thereof, the par value and accrued interest, plus a premium of $65.48. Plaintiff's bond is, in words and figures, as follows, to wit:

"United States of America Street Improvement Bond of the City of Des Moines, Iowa.

"No. 616.                                                     $1,000.00

"The city of Des Moines, in the state of Iowa, promises to pay as hereafter stated to the bearer hereof on the 1st day of May, 1942, *or at any time prior thereto at the option of said city,* the sum of one thousand dollars ($1,000.00), with interest thereon at the rate of six (6) per cent per annum, payable annually on the presentation and surrender of the interest coupons hereto attached. Both principal and interest of this bond are payable at the office of the city treasurer in the city of Des Moines, state of Iowa. This bond is issued by the city of Des Moines, Iowa, under and by virtue of Chapter 8, of Title V, of the Code of Iowa, and the resolution of said city duly passed on the 25th day of June, 1923.

"This bond is one of a series of bonds of like tenor, date and amount, numbered from one (1) to six hundred sixteen (616), and issued for the purpose of defraying the cost of extending, widening, grading and otherwise improving Chestnut Street, now known as Keosauqua Way, as described in said resolution, in said city, which cost is payable by the abutting and adjacent property, as embraced in the assessment district created and established by the resolution of necessity, duly adopted by the city council of the city of Des Moines, Iowa, under and in conformity with Section 751 of the Supplemental Supplement to the Code of Iowa, 1915, and is made by said law a lien on all of said abutting or adjacent property and is payable in twenty (20) annual installments, with interest on all deferred payments at the rate of six (6) per cent per annum, and *this bond is payable only out of*

*the special assessment fund created by the collection of said*
*special tax, and said fund can be used for no other purpose.*

"And it is hereby certified and recited that all the acts, conditions and things required to be done precedent to and in the issuing of this series of bonds have been done, happened and performed in regular and due form, as required by said law and resolution; and for the assessment, collection and payment hereon of said special tax the full faith and diligence of the said city of Des Moines, Iowa, are hereby irrevocably pledged.'

"In testimony whereof, the city of Des Moines, Iowa, by its city council, has caused this bond to be signed by its mayor and countersigned by its city clerk, with the seal of said city affixed, this 1st day of January, 1923." (The italics in the foregoing are ours).

The defendants herein other than the city of Des Moines are the mayor, councilmen, clerk, and treasurer of said city. The city treasurer issued a call of plaintiff's bond, setting out that said bond, along with other unpaid bonds of the said issue, was called for payment as of the 15th day of September, 1926, and that unless presented for payment and paid on that date, interest thereon would thereafter cease.

At the time plaintiff filed its suit, the city of Des Moines had on hand $10,000 in the special assessment fund, which was pledged to the payment of said bond and the other bonds of said issue, and on June 1, 1927, after payment of principal and interest due that day, there was a balance in said fund of $30,000.

It is the intention of the defendant city and its officers to issue refunding bonds, as provided for by Chapter 115 of the Laws of the Forty-first General Assembly, and sell the same, and from the proceeds of said sale, together with the aforesaid amount on hand, pay and take up plaintiff's bond and the other bonds of said issue.

It is conceded that the defendant city has taken proper and legal proceedings to call plaintiff's bond and the other bonds of said issue, if the city has the right and power to call and refund said bonds.

The plaintiff pleads that Chapter 115 of the Acts of the Forty-first General Assembly is unconstitutional, in so far as it contemplates the refunding of bonds issued prior to its passage, without the consent of the holders thereof, the same being in

contravention of Section 21 of Article 1 of the Constitution of the state of Iowa, and in contravention and violation of Section 10 of Article 1 of the Constitution of the United States. The plaintiff asks an injunction against the defendants, restraining them from calling for payment or otherwise refunding the bond owned by it, except out of the proceeds of the special assessments thereto pledged, and restraining them from selling or delivering refunding bonds to call and pay off its bond and the issue of which it is a part.

The trial court dismissed the plaintiff's petition, and rendered judgment against it for the costs; and from this action by the trial court, the plaintiff appeals.

Chapter 115, of the Laws of the Forty-first General Assembly, enacted in 1925, is as follows:

"Section 1. Refunding Bonds. Cities and towns, including cities under special charter, may issue refunding bonds to pay off and take up bonds issued in payment for street improvements and sewers, or to refund any part thereof. No such refunding bonds shall bear an interest rate in excess of that of the bonds refunded.

"Sec. 2. Limitation. Bonds thus issued shall substantially conform to the provisions of Chapter three hundred and eleven (311) of the Code of 1924, and the face amount thereof shall be limited to the amount of the unpaid special assessments with the interest thereof of the particular issue of bonds sought to be refunded.

"Sec. 3. For Refunding Only. Said refunding bonds or their proceeds shall be used only to pay street improvement or sewer bonds so taken up.

"Sec. 4. Expense. The expense of such refunding bonds shall be paid out of the city improvement funds.

"Sec. 5. Retirement. When refunding bonds shall be issued to pay street improvement or sewer bonds, all special assessments and sinking funds applicable to the payment of such bonds previously issued, shall be applicable in the same manner, and to the same extent to the payment of the refunding bonds issued hereunder, and all the powers and duties to levy and carry special assessments and taxes, to create liens upon property, and to establish sinking funds in respect to the bonds previously issued, shall continue until refunding bonds shall be paid.

"Sec. 6. Collection of Assessment. The city or town shall collect the special assessments out of which the said bonds are payable and hold the same special and apart in trust for the payment of said refunding bonds, but it shall be in no way liable except for the proper application of said assessment."

In order to solve the problem which is presented by the conflicting claims of the respective parties, the writer of this dissenting opinion deems it advisable to set out some of the provisions of the statutory law applicable thereto which were in force at the time of the improvement of "Keosauqua Way" and on the date of the issuance of the bonds. Section 751 of the Supplemental Supplement to the Code, 1915, as amended by Chapter 184 of the Laws of the Thirty-ninth General Assembly, provides:

"The expenses of such extension, repairs and improvements may be paid from the general fund, or from the highway or poll taxes of such cities or towns, or partly from each of such funds, or by assessing all or any portion of the cost thereof on abutting and adjacent property according to the benefits derived from such extension, repairs and improvements as provided in Chapter 7 of Title V of the Code and amendments thereto. Provided, however, that the city council may extend the assessments made over a period of not to exceed 20 years payable in equal annual installments, and provided further, that such city council shall have the power to issue certificates or bonds in anticipation of such assessments and levies."

Section 842 of the 1897 Code, as amended by Chapter 244, Laws of the Thirty-seventh General Assembly, provides:

"For the purpose of providing for the payment of the assessed cost of any street improvement or sewer which is to be or has been assessed upon property subject to assessment therefor, including railways and street railways liable for the payment thereof, and, in case of sewers, also upon adjacent property, the council may, by ordinance or resolution, provide for the execution and delivery of bonds for the amount of so much of the assessed cost or any part thereof, in anticipation of the deferred payment of the assessments levied therefor, such bonds to be called 'street improvement bonds' or 'sewer bonds,' and

issued in amounts of one hundred dollars, or multiples thereof not exceeding one thousand dollars, except that one bond may be issued for the amount necessary to make up the exact amount of such cost, which shall not exceed one thousand dollars. Street improvement bonds shall not include any sewer assessments, nor sewer bonds any street improvement assessments.''

Section 833 of the Code of 1897 provides:

''All special assessments levied against abutting property and railways and street railways, for the payment of the cost of making or reconstruction of street improvements or sewers, shall be used for or appropriated to no other purpose than the payment in whole or in part of the cost of such work, or in payment of bonds or certificates issued to pay such cost, with the interest thereon.''

By Section 841 of the 1897 Code, the city could, if it so elected, pay for the cost of the improvement, or any portion thereof, by the issuance of street improvement certificates.

Section 845 of the 1897 Code provides:

''The bonds may be sold at public or private sale, but shall not be sold or negotiated for less than their par value with accrued interest from date to the time of delivery thereof. All the proceeds of bonds and of certificates negotiated shall be paid to the city treasurer, and shall be used only to pay for the cost of street improvements or sewers included in the assessment or assessments pledged to the payment thereof. All money received by said treasurer as proceeds of said bonds or certificates shall be kept in the same manner and subject to all the regulations regarding other money of the city, except that he shall keep an account of each levy of such special assessments, and all interest received and paid shall be credited and charged to such fund.''

It is provided by Section 847 of the 1897 Code as follows:

''Bonds Paid. Such street improvement and sewer certificates, bonds and coupons shall be payable out of funds derived from the special taxes and interest thereon pledged to the payment of the same, and such certificates or bonds shall not be delivered in excess of the special taxes levied; but such certificates, bonds and coupons shall not make the city liable in any

way, except, for the proper application of said special taxes. If any interest shall become due on any of said bonds when there is no fund from which to pay the same, the council may make a temporary loan for the payment thereof, which loan shall be repaid from the special taxes and interest pledged to secure said bonds, but in case of purchase by the city at tax sale of the property on which such tax is levied, it shall then be repaid from the city improvement fund.''

The contention of the appellees is that the bonds, at the option of the city, may be paid at any time, and out of any funds which it may have on hand, and which could have been used to pay the expenses of the improvement; that the provision in the bonds that they are payable only out of the special assessment fund is merely to prevent them from being a general city debt; and that said provision is not binding as against the defendant city.

It is the claim of the appellant that the bond can be paid, or called for payment, prior to May 1, 1942, but only out of the special assessment fund. He does not contend that the bond cannot be paid in any event before May 1, 1942, but does contend that it cannot be paid before May 1, 1942, except as provided in the bond itself, ''out of the special assessment fund.'' The appellant's further contention is that any legislation enacted after the issuance of the bonds which may authorize the city to make payment thereof other than out of the special assessment fund, as provided for in the bond, constitutes an impairment of the obligation of his contract. The proper solution of the problem thus presented involves a construction of the contract as contained in the bond, in the light of the statutory law in force at the time of its issue.

We have held that the issuance of improvement bonds such as the one involved in this suit does not create an indebtedness of the city, within the meaning of the constitutional limitation provided for in Article 11, Section 3, of the state Constitution. See *Davis v. City of Des Moines*, 71 Iowa 500; *Tuttle v. Polk & Hubbell*, 92 Iowa 433; *City of Clinton v. Walliker*, 98 Iowa 655; *Allen v. City of Davenport*, 107 Iowa 90; *Windsor v. City of Des Moines*, 110 Iowa 175; *Swanson v. City of Ottumwa*, 118 Iowa 161; *Sisson v. Supervisors*, 128 Iowa 442; *Corey v. City of Fort Dodge*, 133 Iowa 666; *Hauge v. City of Des Moines*, 207

Iowa 1209. The reason for the holding in the foregoing cases is that there is no promise or agreement, either express or implied, on the part of the defendant city to pay the bond, except out of the special assessment fund provided for that purpose.

It is true that we have held, in certain cases, that the city is liable if, in breach of the terms of the bond, it wrongfully fails to perform its duty and its pledge pertaining to the assessment and collection of the special tax by which the special fund is to be created. See *Hauge v. City of Des Moines*, supra, and the cases therein cited. But this is because of some wrong committed or duty omitted by the city; and plaintiff's cause of action in such cases is for damages against the city because thereof, and not because of any promise in the bond itself to pay out of any fund other than the special assessment fund provided in the bond. The bond provides:

"This bond is payable only out of the special assessment fund created by the collection of said special tax, and said fund can be used for no other purpose."

Can the defendant city, at its option, pay said bond out of any other funds? Is not the aforesaid quoted provision of the bond mutual and binding upon both parties? While it is competent for parties to make a unilateral contract, the intention to do so, as found from its terms and from the surrounding facts and circumstances, must be clear and satisfactory, to warrant such construction. See *Barrett v. Dean*, 21 Iowa 423; *Flanders v. Merrill*, 38 Iowa 583; *Nowlin v. Pyne*, 40 Iowa 166. The writer of this dissenting opinion holds that the aforesaid quoted provision of the contract was binding both upon the defendant city and the holder of the bond, and that the holder of the bond is not required to accept his money prior to May 1, 1942, out of any fund other than the fund therein provided.

While, under Section 751 of the Supplemental Supplement to the Code, 1915, hereinbefore quoted, the costs or expenses of the improvement might be paid from the general fund, or from the highway or poll taxes of such cities or towns, or partly from each of said funds, or by assessing all or any portion of the cost thereof on abutting and adjacent property, according to the benefits derived from such improvements; yet, under the facts of the instant case, this can be of no avail to the defendant city; for it has elected to pay, and has paid, the costs and expenses of

the improvement by the latter alternative therein provided for. The defendant city issued bonds, as it had the legal right to do, under the provisions of Section 842 of the 1897 Code, herein-before quoted. It sold said bonds, and from the proceeds there-of the costs and expenses of the improvement have been paid. The question now before us for our determination is, How may said bonds be paid? The defendant city argues that all of the funds which may be used to pay the expense of the improvement may be used to pay the bonds. But, as it occurs to the writer of this dissenting opinion, the expenses of the improvement have been paid, and the bonds can only be paid as provided by their terms and by the law as it existed at the time of the issuance and sale of the bonds. The bonds provide that they are payable "only out of the special assessment fund created by the collection of said special tax, and said fund can be used for no other purpose." The statutory law, Section 847 of the 1897 Code, provides:

"Such street improvement * * * bonds and coupons shall be payable out of funds derived from the special taxes and interest thereon pledged to the payment of the same, and such * * * bonds shall not be delivered in excess of the special taxes levied; but such * * * bonds and coupons shall not make the city liable in any way, except for the proper application of said special taxes."

And since the cost of the improvement has been paid by the proceeds of the sale of the bonds, the special assessment fund can now be used for no other purpose than the payment of the bonds. See Section 833, Code of 1897. It thus becomes manifest that both the bonds and the law provide that said bonds are to be paid out of the special assessment fund. It is true that, under Section 847 of the 1897 Code, if any interest should become due on any of said bonds when there is no fund from which to pay the same, the council might make a temporary loan for the payment of said interest, "which loan shall be repaid from the special taxes and interest pledged to secure said bonds." But there is no provision in said statute for the payment of the bond itself, other than from the special taxes or assessment fund.

It will be observed that the bond declares:

"The city of Des Moines, in the state of Iowa, promises to

pay as hereafter stated to the bearer hereof on the 1st day of May, 1942, or any time prior thereto at the option of said city, the sum of $1,000.00 * * * and this bond is payable only out of the special assessment fund created by the collection of said special tax, and said fund can be used for no other purpose. * * * and for the assessment, collection and payment hereon of said special tax the full faith and diligence of the said city of Des Moines, Iowa, are hereby irrevocably pledged.''

"To pay as hereafter stated" must refer to the payment out of the special assessment fund; and the option given the defendant city to pay at any time prior to the 1st day of May, 1942, must be construed with the latter part of the contract, providing that "this bond is payable only out of the special assessment fund," etc. The writer concludes that the defendant city could not call the bond for payment, except out of the special assessment fund, and that it had the option to pay or to call for payment of the bonds at any time, only out of said fund. The defendant city does not intend to pay the bonds out of the special assessment fund, but intends to borrow the money by the sale of another issue of bonds (refunding bonds), and out of the proceeds of said sale to pay the bonds now in existence.

Municipal corporations are bound by their contracts, the same as individuals.

In *Sheneberger v. Union Cent. Life Ins. Co.*, 114 Iowa 578, a note was executed by the maker, due in ten years from date, which note was secured by a mortgage. The note contained the following provision:

" 'This note is executed upon the condition that partial payments in any amount at any time after one year, will be received, and that the interest will be rebated from the date of such payments. This condition is waived, provided the matured indebtedness has not been paid as agreed, the maker's total indebtedness is not being reduced, or provided the money tendered is borrowed in whole or part elsewhere.' "

Three years after the execution of the note, the maker obtained a loan on the same land from another, and tendered the proceeds thereof to the payee, sufficient in amount to pay the indebtedness. The payee refused to accept the money, and the maker prayed for a cancellation of the mortgage, and the relief was denied. We there said:

" * * * there is nothing objectionable in a pledge to pay only from a special fund or a particular estate, and such a promise will be enforced.''

In *Lasher v. Union Cent. Life Ins. Co.*, 115 Iowa 231, the plaintiff brought an action to cancel a note and mortgage on the ground that full payment had been tendered prior to the bringing of the suit. The defense was that the note had not matured when tender was made. The note in question provided as follows:

" 'This note is executed upon the condition that partial payments in any amount at any time will be received, and that the interest will be rebated from the date of such payments. This condition is waived provided the matured indebtedness has not been paid as agreed, the maker's total indebtedness is not being reduced, or providing the money tendered is borrowed in whole or in part elsewhere.' ''

The plaintiff admitted that a part of the money tendered in payment of the note was borrowed, but contended that this provision of the note had reference to part payments only, and that, if the defendant was paid all of his money, he had no further interest in the matter. The court said:

"Plaintiff contends that it does not apply to a payment in full; that he could make that at any time and from any fund, no matter when or how procured; and that, in any event, the waiver referred to in the contract is an independent covenant not binding on him * * * . We do not think this a proper construction of the instrument. * * * Claim is made that, if defendant is paid in full, it can have no possible interest in this matter. But we do not think this is true. Defendant was interested, as all investors are, in having its money drawing interest. Long-time loans are always to be preferred by judicious money loaners. To enable the borrower to pay from his accumulated surplus, it inserted the provision on which the plaintiff relies, and, to save its security, provided that payments would only be received on certain conditions. Manifestly, one of the reasons for the last condition was to prevent the borrower from going to someone else and securing a loan at a lower rate of interest, and with the proceeds paying the notes he had heretofore executed to the lender. This was by no means a one-sided

proposition. Defendant was obliged to let the plaintiff have the money for the full term of 10 years at the rate of 7 per cent interest, no matter how high the interest rates might become during this period; and plaintiff, on his part, agreed to pay that rate of interest during the full term of the loan, unless he could lay by from his own earnings, or from the sale of property, enough to make partial or complete payments is provided in the note. Having conceded that he borrowed part of the money tendered from someone other than the defendant, he had no right to insist that defendant take it and cancel his obligation. Authorities need not be cited to the point that a condition must be read as a whole, and that the promises therein contained are mutual and dependent. Each contains the consideration for the other, and they are not independent in terms. * * * If this be not true, then plaintiff had the right to pay the entire loan the next month after he received it, with money borrowed from someone else who would give him a lower rate of interest than he had contracted to pay defendant. Surely, this is not a proper construction of the contract, and it certainly was not the intent of the parties that it should have this construction. Effect must be given all the provisions of the note.''

If, as held in the two cases last above cited, the makers of the notes could not borrow the money and thus pay their obligations to the payee prior to the time ultimately fixed for the payment of the same, neither can the defendant city procure the money otherwise than out of the special assessment fund provided for the payment of the bond, and compel the bondholder to take its money prior to May 1, 1942. The obligation of the defendant city was to pay the appellant's bond on the 1st day of May, 1942, or, at its option, at any other time prior thereto, but only out of the special assessment fund.

Any statute enacted subsequent to the time of the issuance and sale of the bond which permits or authorizes the city to pay said bonds otherwise than out of said special assessment fund is void and unconstitutional, as it impairs the obligation of the contract contained in the plain provisions of the bond.

"No state shall * * * pass * * * any * * * law impairing the obligation of contracts." Section 10, Article 1, Constitution of the United States.

"No * * * law impairing the obligation of contracts shall

ever be passed." Section 21, Article 1, Constitution of the state of Iowa.

The obligation of a contract includes everything within its obligatory scope. *Edwards v. Kearzey*, 96 U. S. 595. Obviously, a law which alters the terms of a contract, either by imposing new terms or by dispensing with those expressed in it, impairs its obligation. *State Tax on Foreign-held Bonds*, 15 Wall. (U. S.) 300.

"Any enactment of a legislative character is said to 'impair' the obligation of a contract which attempts to take from a party a right to which he is entitled by its terms, or which deprives him of the means of enforcing such a right." 12 Corpus Juris 1056.

"The obligation of a contract is defined as the law or duty which binds the parties to perform their agreement." 6 Ruling Case Law 324, Section 313, and authorities cited under Note 18.

"It is a fundamental rule that a state by the act of its legislature cannot alter the nature and legal effect of an existing contract, to the prejudice of either party * * * ." 6 Ruling Case Law 327, Section 317.

The courts, from time to time, have announced certain tests and principles serving as guides in determining the validity of statutes attacked as impairing the obligation of contracts, such as the fact that the party is deprived of the benefits of his contract. 6 Ruling Case Law 328, Section 318.

"Since the prohibition as to the impairment of the obligation of contracts is absolute, the amount and extent of the impairment is immaterial." 6 Ruling Case Law 329, Section 319.

The right of the bondholders, under their bonds (or contracts), is to have them paid out of the special assessment fund; but Chapter 115, Laws of the Forty-first General Assembly, under which the defendant city is attempting to act, provides that the city may issue refunding bonds, and that said refunding bonds, or the proceeds thereof, shall be used to pay the bonds of the bondholders, and that the special assessments which constitute the fund out of which the present bondholders are to be paid shall constitute the fund out of which the refunding bonds

shall be paid. The effect of Chapter 115, Laws of the Forty-first General Assembly, is to permit the defendant city to borrow money, using the special assessment fund pledged to the payment of the bonds held by the present bondholders, and out of the money thus borrowed (the proceeds of the refunding bonds) to pay off the bonds now in existence, when, according to their terms, they are not due unless paid out of the special assessment fund. This is contrary to the rights of the bondholders, and amounts to an impairment of the obligation of the contract. Of course, in so far as the sale of any bonds after the taking effect of Chapter 115, Laws of the Forty-first General Assembly, is concerned, it would in no way affect the contract rights, as the parties buying the bonds must purchase with their eyes open as to the rights given the city under said statute; but if it is to be applied to bonds issued and sold prior to the time that it took effect, then it is unconstitutional, because it impairs the obligation of said contracts. See *Condon v. City of Eureka Springs*, 135 Fed. 566.

In *Sebern v. Cobb*, 41 Ida. 386 (238 Pac. 1023), the Supreme Court of Idaho passed upon a proposition similar to the one which we have before us for determination. The case involved the right of the board of county commissioners to call for payment an issue of $65,000 special assessment drainage bonds prior to the time when the bonds would be callable from funds to be collected on the special assessments. The form of the bonds, which conformed to the statute, provided:

" 'This bond is subject to redemption in numerical order by the treasurer of Ada County whenever he has upon hand $5,000 of the special fund for the payment of said bonds, after said bonds shall have run for a period of three years, upon the giving of notice thereof, in the manner provided by law.' "

The bonds bore date of August 1, 1922, and it was the contention of the board of commissioners that, under the provision above quoted, the bonds could be called for payment August 1, 1925. The statutory law at the time of the issuance of the bonds provided a method of payment dependent upon assessments. The district could levy assessments for the payment of outstanding bonds, not exceeding 20 per cent per annum. Under the provisions of said statutory law, the district could not have raised by August 1, 1925, over 60 per cent of the amount of the

bonds issued August 1, 1922. In 1925, a law providing for the refunding of said bonds was enacted by the legislature, and pursuant thereto, the board of county commissioners, contending that the three years mentioned in the statute and in the bonds had expired, and that the bonds were therefore callable at any time, undertook to retire or call for payment the issue of $65,000 worth of bonds outstanding August 1, 1925. The court, in passing upon the proposition, said:

"That provision [this bond is subject to redemption in numerical order by the treasurer of Ada County whenever he has upon hand $5,000 of the special fund for the payment of said bonds, after said bonds shall have run for a period of three years, upon the giving of notice thereof, in the manner provided by law], as a part of the law under which the bonds were issued, as well as incorporated in the bonds, became and was a part of the contract of the bondholders. To provide a call of the treasurer without having funds in his hands to pay the bonds called, or to issue the call for the last issue before August 1, 1925, would be in violation of the rights of the bondholders and impair the obligation of their contract. The holders of those bonds for which funds could not be raised by the existing statutes earlier than the fourth or fifth year, by a maximum 20 per cent levy, or, as the court found, the two fifths of the issue of 1922, have a right to depend upon the law as it was when the bonds were issued. They had a right then to expect that those bonds could not, and would not, be redeemed in three years, or in less than four and five years; and to change the method of payment so that they could be called earlier impairs the obligation of their contract."

It will be observed that, in the Idaho case, the bonds could not be called for payment until the treasurer had $5,000 of the special fund on hand; while in the instant case, the bonds are payable at the option of the city at any time, but only out of the special assessment fund. In *Davis v. County of Yuba*, 75 Cal. 452 (13 Pac. 874), the Supreme Court of California passed upon a similar proposition. The statute provided that the bonds should run for 20 years after January 1, 1873; that the board of supervisors should levy a tax each year, to be styled the "Yuba County Wagon-Road & Bridge Interest and Sinking-fund Tax," which was to be sufficient in amount to meet the interest, which

was payable semiannually; that whenever, at any time after the payment of the July interest of said bonds, there remained in this fund a sum of money equal to $5,000 over and above the amount required to pay the annual interest, the board of supervisors could call the bonds for payment in the prescribed manner. It was held that, to the extent of the means on hand *thus raised,* and in such fund, the county had the right to extinguish the bonds, but that the board of supervisors did not have the right to resort to *other and independent means, such as issuing new bonds, under Sections 4048 to 4052, inclusive, of the Political Code,* and, by placing the means thus raised in the sinking fund, pay off the bonds of the plaintiff against his consent. The court said:

"Respondent concedes that these bonds are contracts of which the act under which they were issued forms a part, and the obligations of which cannot be impaired by subsequent legislation. His contention is that it was the purpose of the legislature, by the act of March 28, 1872, to give to the county of Yuba 20 years within which to make payment of said bonds, if it so desired, and at the same time to confer upon the county authority to make payment thereof at any time within that period, provided sufficient funds were in the hands of the officers of the county with which to make such payment. We cannot so construe the act of March 28, 1872. * * * The board of supervisors was authorized by Section 6 of the act, 'whenever, at any time, after the payment of the July interest of said bonds, there shall be in the funds *so raised for the payment of the principal and interest* of said bonds, a sum of money amounting to $5,000.00 over and above the amount required for the payment of the annual interest,' etc.; to pay such sum on the principal of the bonds, in the manner by the act provided. A *sum of money thus raised, and in the fund,* was the condition upon which any of the bonds could be paid before the expiration of 20 years. * * * *What the board of supervisors did in fact do, was to raise funds by the issue and sale of other bonds, for the payment of those we are considering.* We are of opinion the purchaser of these bonds had a right to hold and collect interest on them for 20 years, subject to the contingency provided in the statute under which they were issued of having them paid sooner, if the fund therein provided for should prove

adequate to that end. This was a contingency which the purchaser could estimate, and which might well become an important factor in determining the value of the offered security. It was a part of his contract, and he had a right to rely upon such contingency as the only one under which the term of his investment could be curtailed."

Likewise, in the instant case, appellant's bond, by its terms, was "payable only out of the special assessment fund." The statutory law, Section 847 of the 1897 Code, provides that the bonds shall be payable out of funds derived from the special taxes and interest thereon pledged to the payment of the same, and that such bond shall not make the city liable in any way, except for the proper application of said special taxes; and since the cost of the improvement has been paid by the proceeds of the sale of the bonds, Section 833 of the Code of 1897 provides, in substance, that the only proper application of said special taxes (assessment fund) is the payment of the bonds. What the city now purposes doing is not to pay the improvement bonds out of the special assessment fund provided for that purpose, but to pay the same out of the balance of said fund now on hand and out of another fund, to be raised by refunding the bonds, as provided for by Chapter 115, Laws of the Forty-first General Assembly.

The writer of this dissenting opinion holds that appellant's bond can be redeemed or called for payment prior to May 1, 1942, only out of the special assessment fund. To pay the same prior to May 1, 1942, against his consent, out of another fund, the proceeds of the sale of refunding bonds, would be an impairment of the obligation of the contract. I would reverse.

De Graff, J., joins in the dissent.